UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
EXPORTACIONES DEL FUTURO S.A. DE C.V., :
                                                          :
                                      Plaintiff,          :       Docket No. 07 Civ 4145
                   - against -                            :
                                                          :
ICONIX BRAND GROUP INC. and                               :
IP HOLDINGS, LLC,                                         :
                                                          :
                                    Defendants.           :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANTS' MOTION TO DISMISS

SPEARS & IMES LLP
51 Madison Avenue, 25th floor
New York, New York 10010
Tel: (212) 213-1715
Fax: (212) 213-0849

*Attorneys for Defendants Iconix*
*Brand Group, Inc. and IP Holdings LLC*

## **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................................1

PLAINTIFF'S COMPLAINT ..............................................................................................1

ARGUMENT
      PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
      RELIEF MAY BE GRANTED AND MUST THEREFORE BE DISMISSED .................3

    A.  Defendants Are Not Bound by the Terms of the Unsigned Agreement .........................3

          1.  The Parties Reserved the Right Not to be Bound Prior to Execution.................4

          2.  There Was No Partial Performance ..................................................................7

          3.  A Multi-Million Dollar Exclusive Licensing Agreement Would Certainly
              Be Committed to Writing ...............................................................................9

    B.  The Statute of Frauds Bars Enforcement of the Alleged Contract ...................................11

    C.  Plaintiff Fails to Allege the Elements of a Tortious Interference Claim
       Against Iconix..............................................................................................................15

    D.  Plaintiff Fails to Allege the Elements of a Claim of Interference with Prospective
       Business Advantage.....................................................................................................18

CONCLUSION ...................................................................................................................21

## TABLE OF AUTHORITIES

<u>Federal Cases:</u>

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*, --- F.3d ---, 2007 WL 1989336
(2d Cir. July 11, 2007)............................................................................................3

*Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543 (2d Cir. 1998).....................3, 4, 9

*Antonios A. Alevizopoulos and Associates, Inc. v. Comcast Intern. Holdings, Inc.*,
100 F.Supp.2d 178 (S.D.N.Y. 2000) ......................................................................17

*Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir.1989)........................................4

*Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323
(S.D.N.Y. Feb. 14, 2006)........................................................................................6

*Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007).................................................3, 17

*Berwick v. New World Network Intern., Ltd.*, 2007 WL 949767 (S.D.N.Y. March
28, 2007)..........................................................................................................21

*Braun v. CMGI, Inc.*, 2001 WL 921170 (S.D.N.Y. Aug. 14, 2001), *aff'd*,
2003 WL 21182068 (2d Cir. 2003) ........................................................................4, 10

*Brown v. Cara*, 420 F.3d 148 (2d Cir. 2005)........................................................................9

*Camp Summit of Summitville v. Visinski*, 2007 WL 1152894 (Apr. 16, 2007) .................................21

*Cardiocall, Inc. v. Serling*, --- F.Supp.2d ---, 2007 WL 1791643 (E.D.N.Y. June 20, 2007)...........20

*Cedric Kushner Promotions, Ltd. v. King*, 1999 WL 13732 (S.D.N.Y. Jan. 11, 1999) ...................5

*Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320 (2d Cir. 1997) .......................................4, 5, 6

*Conocophillips v. 261 East Merrick Road Corp.*, 428 F.Supp.2d 111 (E.D.N.Y. 2006).................16, 17

*Cohen v. Lehman Brothers Bank, FSB*, 273 F.Supp.2d 524 (S.D.N.Y. 2003).................................10

*Cruz v. OneSource Facility Services, Inc.*, 2005 WL 2923517 (S.D.N.Y. Nov. 4, 2005) ...............5, 7

*Guilbert v. Gardner*, 480 F.3d 140 (2d Cir. 2007) ..............................................................11

*Italverde Trading, Inc. v. Four Bills of Lading Numbered LRNNN 120950, LRNNN
122950, LRNN 123580, MSLNV 254064*, 485 F.Supp.2d 187 (E.D.N.Y. 2007) .................15-16

*Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.,*
968 F.2d 286 (2d Cir. 1992) ................................................................................................16

*Jim Bouton Corp. v. Wm. Wrigley Jr. Co.,* 902 F.2d 1074 (2d Cir. 1990) .......................................3

*Kaplan v. Vincent,* 937 F.Supp. 307 (S.D.N.Y. 1996) ....................................................................5

*Lindner v. American Exp. Corp.,* 2007 WL 1623119 (S.D.N.Y. June 5, 2007) ...............................5

*Multi-Juice, S.A. v. Snapple Beverage Corp.,* 2006 WL 2548475 (S.D.N.Y. Sept. 1, 2006) ...........8

*Ohanian v. Avis Rent A Car System, Inc.,* 779 F.2d 101 (2d Cir. 1985) ...........................................11, 12

*PKG Group, LLC v. Gamma Croma, S.p.A.,* 446 F.Supp.2d 249 (S.D.N.Y. 2006)........................18, 19

*R.G. Group, Inc. v. Horn & Hardart Co.,* 751 F.2d 69 (2d Cir. 1984) ............................................3, 7, 9

*Record Club of America, Inc. v. United Artists Records, Inc.,* 611 F.Supp. 211
(S.D.N.Y.1985).....................................................................................................................16

*Simone v. N.V. Floresta, Inc.,* 1999 WL 429504 (S.D.N.Y. June 18, 1999)....................................5

*Solutia Inc. v. FMC Corp.,* 456 F.Supp.2d 429 (S.D.N.Y. 2006) ....................................................10

*Special Event Entertainment v. Rockefeller Center, Inc.,* 458 F.Supp. 72 (S.D.N.Y. 1978) ............12

*Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.,*
383 F.Supp.2d 428 (S.D.N.Y. 2003) ...................................................................................10

*Stockalert, Inc. v. Nasdaq Stock Market, Inc.,* 1998 WL 556036 (S.D.N.Y. Sept. 1, 1998).............5

*Vanderbilt University v. Dipsters Corp.,* 1985 WL 9366 (S.D.N.Y. July 2, 1985) ..........................14

*White Plains Coat & Apron Co., Inc. v. Cintas Corp.,* 460 F.3d 281 (2d Cir. 2006).......................15, 16

*Winston v. Mediafare Entertainment Corp.,* 777 F.2d 78 (2d Cir. 1985)..........................................10

*Zaitsev v. Salomon Bros., Inc.,* 60 F.3d 1001 (2d Cir. 1995) ..........................................................12, 13, 14

*Zikakis v. Staubach Retail Services, Inc.,* 2005 WL 2347852 (S.D.N.Y. 2005) ...............................20

New York State Cases:

*Abady v. Interco Inc.*, 76 A.D.2d 466, 430 N.Y.S.2d 799 (1st Dep't 1980) ..................................... 12

*Belfert v. Peoples Planning Corp. of America*, 22 Misc.2d 753, 199 N.Y.S.2d 839
   (Sup. Ct. N.Y. Co. 1959), *aff'd*, 11 A.D.2d 760, 202 N.Y.S.2d 101
   (1st Dep't 1960), *aff'd*, 11 N.Y.2d 755, 226 N.Y.S.2d 693 (1962)........................................ 15

*Buechner v. Avery*, 38 A.D.3d 443, 836 N.Y.S.2d 1 (1st Dep't 2007) .............................................. 16

*Blake v. Voight*, 134 N.Y. 69, 31 N.E. 256 (1892) ........................................................................ 12

*CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 A.D.3d 421,
   837 N.Y.S.2d 609 (1st Dep't 2007)............................................................................................ 17

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004) ................................. 18, 19, 20

*D & N Boening, Inc. v. Kirsch Beverages*, 63 N.Y.2d 449, 483 N.Y.S.2d 164 (1984).................... 11

*E.F. Hutton Intern. Assoc. Ltd. v. Shearson Lehman Brothers Holdings, Inc.*, 281 A.D.2d
   362, 723 N.Y.S.2d 161 (1st Dep't 2001)................................................................................ 17-18

*Felsen v. Sol Café Mfg. Corp.*, 24 N.Y.2d 682, 301 N.Y.S.2d 610 (1969) ...................................... 16

*Foster v. Churchill*, 87 N.Y.2d 744, 642 N.Y.S.2d 583 (1996) ....................................................... 15

*Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) ..18, 19

*Harris v. Home Indemnity Co.*, 6 A.D.2d 861, 175 N.Y.S.2d 603 (1st Dep't 1958) ........................ 15

*Hirsch v. Food Resources, Inc.*, 24 A.D.3d 293, 808 N.Y.S.2d 618 (1st Dep't 2005) ..................... 17

*Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 151 N.Y.S.2d 1 (1956) .................................................. 15

*Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*, 296 A.D.2d 103,
   744 N.Y.S.2d 384 (1st Dep't 2002)............................................................................................ 16

*NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641
   N.Y.S.2d 581 (1996)................................................................................................................... 18

*Sawyer v. Sickinger*, 47 A.D.2d 291, 366 N.Y.S.2d 435 (1st Dep't 1975) ...................................... 14

*Scheck v. Francis*, 26 N.Y.2d 466, 311 N.Y.S.2d 841 (1970) ....................................................... 3, 5

*Warwick Assocs. v. FAI Ins. Ltd.*, 275 A.D.2d 653, 713 N.Y.S.2d 178 (1st Dep't 2000)................. 9

<u>Other Authorities</u>:

Fed.R.Civ.P. 11...................................................................................................................17

Fed.R.Civ.P. 12(b)(6) ......................................................................................................1, 21

N.Y. Gen. Oblig. Law § 5-701(a)(1) ................................................................................11

Restatement (Second) of Torts § 767 ................................................................................19

Restatement (Second) of Torts § 768, Comment ..............................................................19

## INTRODUCTION

Plaintiff Exportaciones del Futuro S.A. de C.V. ("EF") brings this breach of contract action against Iconix Brand Group Inc. ("Iconix") and subsidiary IP Holdings LLC ("IP") on the basis of a formally negotiated but undisputedly **unexecuted** agreement. Even accepting as true the allegations of the Complaint, the manifest intent of the parties was not to be bound unless and until final execution; in the absence of a contract signed by either defendant (the draft incorporated in the Complaint is signed only by plaintiff), plaintiff fails to state a claim. In addition, enforcement of the alleged agreement, with a term longer than one year, is barred by the Statute of Frauds. Finally, plaintiff fails to allege the requisite elements of a claim for tortious interference with an existing contract or with prospective business advantage. For these reasons, the Complaint must be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

## PLAINTIFF'S COMPLAINT

Plaintiff EF is a corporation that purports to manufacture, market and distribute products in Mexico. Complaint[1] at ¶¶ 2, 7-8. Defendant Iconix is in the business of licensing trademarks and wholly owns defendant IP. *Id.* at ¶¶ 9-13.

The Complaint alleges that, in early 2006, EF principal Joseph Gershon entered into an oral agreement with defendants to determine whether it would be profitable to license their "Mudd" trademark in Mexico.[2] Purportedly in furtherance of that alleged oral agreement, Gershon traveled around Mexico to determine potential markets for products carrying the Mudd trademark, met and negotiated with potential manufacturers and distributors of Mudd products,

---

[1] Plaintiff's May 24, 2007 Complaint is annexed as Exhibit A to the accompanying Declaration of Debra A. Karlstein, Esq., dated July 20, 2007.

[2] Although defendants deny having entered any such oral agreement, we accept as true for purposes of this motion to dismiss the facts alleged in the Complaint.

and traveled to Mexico with a representative of defendants to meet with a denim manufacturer, Futuro Exports.  Complaint at ¶¶ 15-17.

Gershon concluded that it would be profitable to sell Mudd goods in Mexico.  The parties therefore entered into negotiations towards a formal, written agreement that would have granted EF an exclusive license to manufacture, market and distribute the Mudd line of fashion clothing in Mexico.  The licensing agreement would have continued through December 2009, for a term of more than three years, and was renewable at plaintiff's option for an additional three year period.  Complaint at ¶¶ 18-23.

Although plaintiff signed and delivered the agreement, **it is undisputed that defendants did not**.  Complaint at ¶¶ 18-24.  The draft annexed as Exhibit 1 to plaintiff's Complaint is signed only by a representative of plaintiff; although it contains an execution line for IP holdings, no signature appears on it.

Within days of plaintiff's delivery, defendants verbally advised Gershon that they did not wish to proceed, and they also sent written confirmation that they would not sign the agreement and that Gershon should not hold himself out as having a relationship with defendants.  *Id.* at ¶¶ 30-33.  The Complaint alleges that defendants thereafter entered into an exclusive license agreement for distribution of the Mudd line in Mexico with Futuro Exports, a manufacturer with whom Gershon had previously met.  *Id.* at ¶¶ 31, 35.

The Complaint contains three claims for relief: breach of contract based on defendants' purported repudiation and breach of the unexecuted agreement, Complaint at ¶¶ 37-38; Iconix' purported tortious interference with the alleged contract between its subsidiary IP and plaintiff, *id.* at ¶¶ 39-44; and defendants' alleged interference with plaintiff's prospective business relationship with Futuro Exports, *id.* at ¶¶ 45-48.  Although the agreement provides for minimum

2

annual royalties ranging only from $99,000 to $195,000 over six years, Plaintiff seeks $5.7

million in purported damages. *Id.* at ¶¶ 38, 44.

**ARGUMENT**

**PLAINTIFF'S COMPLAINT FAILS TO STATE A CLAIM UPON WHICH
RELIEF MAY BE GRANTED AND MUST THEREFORE BE DISMISSED**

"To survive dismissal, the plaintiff must provide the grounds upon which his claim rests

through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI*

*Communications, Inc. v. Shaar Fund, Ltd.*, --- F.3d ---, 2007 WL 1989336 (2d Cir. July 11,

2007) (*quoting Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S.Ct. 1955 (2007)). A

"plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'" under

Fed. R. Civ. P. 8(a) "requires more than labels and conclusions." *Bell Atlantic v. Twombly*, 127

S.Ct. at 1964-65. Required "at the pleading stage" are factual "allegations plausibly suggesting

... that the pleader is entitled to relief." *Id.* at 1966.

**A.  Defendants Are Not Bound by the Terms of the Unsigned Agreement**

It is undisputed that the parties were negotiating towards a formal written agreement and

that the defendants never formally executed and delivered one. *See* Complaint at ¶¶ 18-19, 30

and Exhibit 1 (written agreement signed only by plaintiff). "Under New York law, if parties do

not intend to be bound by an agreement until it is in writing and signed, then there is no contract

until that event occurs." *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir.

1984) (*citing Scheck v. Francis*, 26 N.Y.2d 466, 469, 311 N.Y.S.2d 841, 843 (1970)). *See also*

*Jim Bouton Corp. v. Wm. Wrigley Jr. Co.*, 902 F.2d 1074, 1081 (2d Cir. 1990).

The Second Circuit applies a four-part test to determine "whether the parties to a

preliminary agreement that called for execution of a formal instrument intended to be bound in

the absence of such an executed final instrument." *Adjustrite Systems, Inc. v. GAB Business*

3

*Services, Inc.*, 145 F.3d 543, 549 (2d Cir. 1998). The relevant factors are "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.* In this case, although the parties reached agreement on terms, none of the remaining three factors weighs in favor of a binding contract.

### 1.  The Parties Reserved the Right Not to be Bound Prior to Execution

"The most important factor to consider is whether the parties expressly reserved their contractual obligations until the execution of a writing." *Braun v. CMGI, Inc.*, 2001 WL 921170 at *7 (S.D.N.Y. Aug. 14, 2001) (Pauley, J.) (*citing Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir.1989)), *aff'd*, 2003 WL 21182068 (2d Cir. 2003). Even when parties do not expressly state that they will not be bound in the absence of a signed agreement, "the language of draft contracts or other exchanged documents may indicate that they intended only a formal signed instrument to create a binding contract." *Id.*

In this case, the language of the unsigned agreement itself plainly and unmistakably "indicate[s] that the parties contemplated the moment of signing as the point when the [agreement] would become binding." *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 324 (2d Cir. 1997). The Court "must give these statements considerable weight, as courts should avoid frustrating the clearly-expressed intentions of the parties." *Id.*

*First*, the unsigned agreement on which plaintiff relies contains an execution line for each party, and the top of each page is marked "Execution Copy." *See* Complaint at Exhibit 1. Plaintiff admits that defendants "demanded that Gershon execute the Agreement on behalf of Plaintiff ..." Complaint at ¶ 24. Multiple references to "execution" provide conclusive evidence

4

that defendants did not intend to be bound unless and until the agreement was formally signed by all parties. *See, e.g., Scheck v. Francis*, 26 N.Y.2d at 469-70, 311 N.Y.S.2d at 842-43 (agreement signed only by plaintiff held unenforceable where last draft was mailed with cover letter "requesting the plaintiff to 'sign all copies' and 'have [defendant] Connie [Francis] sign' them"); *Cedric Kushner Promotions, Ltd. v. King*, 1999 WL 13732 at *2 (S.D.N.Y. Jan. 11, 1999) (Pauley, J.) ("use of the terms 'execution' and 'draft' as evidence that the parties did not intend to be bound in the absence of a signed writing."); *Stockalert, Inc. v. Nasdaq Stock Market, Inc.*, 1998 WL 556036 at *10 (S.D.N.Y. Sept. 1, 1998) (Keenan, J.) (no intent to be bound in the absence of a written agreement where "draft contained execution pages for the parties' signatures"); *Kaplan v. Vincent*, 937 F.Supp. 307, 313 (S.D.N.Y. 1996) (Parker, J.) (no binding agreement where exchanged drafts included an execution page and last draft included a cover letter stating "I am sending a set of duplicates for execution.").

*Second*, the document contains a merger clause,[3] which is also "persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." *Ciaramella v. Reader's Digest*, 131 F.3d at 324. *See also Cruz v. OneSource Facility Services, Inc.*, 2005 WL 2923517 at *2 (S.D.N.Y. Nov. 4, 2005) (Preska, J.) ("draft settlement agreement contained a merger clause, which is a strong indication that the parties did not intend to be bound until the final written settlement agreement was executed"); *Lindner v. American Exp. Corp.*, 2007 WL 1623119 at * 6 (S.D.N.Y. June 5, 2007) (Koeltl, J.) (same); *Simone v. N.V. Floresta, Inc.,* 1999 WL 429504 at * 9 (S.D.N.Y. June 18, 1999) (Brieant, J.) (parties "exchanged several drafts, all

---

[3]      The merger clause is found in ¶ 22.5 and provides: "This Agreement contains the entire understanding and agreement between the parties hereto with respect to the subject matter hereof, supersedes all prior oral or written understandings and agreements relating thereto and may not be modified, discharged or terminated, nor may any of the provisions hereof be waived, orally." *See* Complaint at Exhibit 1, p. 13.

5

of which included merger clauses, again each indicating an intent not to be bound until the formal contract was signed").

*Third*, the first paragraph following the "Whereas" clauses on the first page of the agreement states: "in consideration of the mutual covenants hereinafter set forth, Licensor [defendant IP] and Licensee [plaintiff] do **hereby** respectively grant, covenant and agree **as follows:** ..." (emphasis supplied).  The next paragraph, 1.1(a), also expressly states that "Licensor **hereby** grants to Licensee an exclusive license ..." (emphasis supplied).  These references provide yet additional evidence that the parties intended not to be bound until the moment of execution.  *See Ciaramella v. Reader's Digest*, 131 F.3d at 324 (finding no binding agreement prior to execution of a draft in which first paragraph after the "Whereas" clauses reads, "NOW, THEREFORE, with the intent to be legally bound **hereby**, and in consideration of the mutual promises and covenants contained herein, Reader's Digest and Ciaramella agree to the terms and conditions **set forth below**: ...").

*Fourth*, Section 2.1 of the agreement, under the heading "Term", provides that "[t]he initial term of this Agreement is approximately three years and nine months **commencing as of the date hereof**," another strong indication that the parties did not intend to be bound until the date of signing.

In sum, the unsigned document is replete with evidence of the parties' intentions.  To allow plaintiff's case to proceed "would be effectively to eliminate the protection provided by New York contract law to negotiating parties who explicitly state their intent to not be bound until a contract is executed ..." *Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323 at *6 (S.D.N.Y. Feb. 14, 2006) (Cote, J.).

6

## 2. <u>There Was No Partial Performance</u>

Although plaintiff conclusorily alleges that it "performed on the Agreement," Complaint at ¶ 28, it is black letter law that "[a]ny partial performance must be accepted by the party disclaiming the alleged contract." *Cruz v. OneSource Facility Services,* 2005 WL 2923517 at *3. *See also R.G. Group v. Horn & Hardart*, 751 F.2d at 75-76 ("partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect.") The Complaint tellingly omits any allegation that defendants accepted performance under the unsigned agreement; to the contrary, rather, defendants took immediate steps to sever any relationship with plaintiff. Specifically, in October 2006, just after plaintiff signed and returned the last draft to defendants, they "informed [plaintiff's principal] Gershon by telephone that Defendants did not want to proceed with the Agreement". Complaint at ¶ 30. Thereafter, on November 3, 2006, defendants wrote an e-mail stating that they had "decided that it would not be in [their] interests … to sign a licensing agreement" with plaintiff. *Id.* at ¶ 33. That same e-mail directed plaintiff to "immediately discontinue any discussions" with potential customers or suppliers. *Id.* Finally, defendants advised plaintiff to "[p]lease be aware that you no longer have our permission or authorization to represent yourself or [plaintiff] Exportaciones del Futuro as having a legitimate relationship with our company or the Mudd brand." *Id.* Rather than accept partial performance under the unsigned agreement, therefore, defendants affirmatively tried to prevent plaintiff from attempting to perform.

Moreover, plaintiff's contention that it partially performed under the written agreement that it now seeks to enforce is completely belied by the remaining allegations of the Complaint. Plaintiff alleges that between early 2006 and October 2006, principal Gershon was operating

under "an oral agreement with Iconix to determine whether it would be profitable to exploit the Mudd trademark in Mexico …" *Id.* at ¶ 16. The Complaint claims that Gershon engaged in substantial activity "over a period of several months" **pursuant to that oral agreement**, including:

    a. Traveled within and without Mexico to determine potential markets for products carrying the Mudd trademark;

    b. Met with potential manufacturers and distributors of Mudd products, and conducted negotiations with these potential manufacturers and distributors;

    c. Conducted … meetings with [defendants' employees] Tarshis and Tentler; and

    d. Traveled to Mexico with Tentler to meet with a company that manufactures denim clothing, known as "Futuro Exports."

Complaint at ¶ 17.

       Thereafter, the parties entered into negotiations towards a formal, written, exclusive licensing agreement. Plaintiff signed and returned it to defendants at some time after October 3, 2006, but within days, defendants "informed Gershon by telephone that Defendants did not want to proceed with the Agreement." Complaint at ¶¶ 18-20, 24, 30. Although plaintiff now contends that it partially performed **the written agreement** when "Gershon sought out and negotiated tentative agreements with third parties in Mexico for the manufacture marketing, and distribution of the Mudd line," Complaint at ¶ 28, the language of the Complaint makes perfectly clear that Gershon was acting **pursuant to the oral agreement that lasted throughout most of 2006**; there is simply no indication that this activity took place during the few days in October between the time that plaintiff signed the written contract and the time that defendants indicated that they would not proceed. *See, e.g., Multi-Juice, S.A. v. Snapple Beverage Corp.,* 2006 WL 2548475 at * 6 (S.D.N.Y. Sept. 1, 2006) (Patterson, J.) ("it is much more likely that" plaintiffs' conduct was "in anticipation of finalizing [a] written distribution agreement" rather than partial

performance of an alleged unsigned agreement).  Plaintiff alleges no partial performance

pursuant to the contract that it now seeks to enforce.

### 3.  A Multi-Million Dollar Exclusive Licensing Agreement Would Certainly Be Committed to Writing

"New York courts have recognized that the 'complexity and duration of [an] alleged

agreement' is particularly significant in determining whether it must be reduced to formal

writing in order to be fully enforceable." *Brown v. Cara*, 420 F.3d 148, 155 (2d Cir. 2005)

(*quoting Warwick Assocs. v. FAI Ins. Ltd.*, 275 A.D.2d 653, 713 N.Y.S.2d 178 (1st Dep't 2000)).

*See also R.G. Group v. Horn & Hardart*, 751 F.2d at 75 ("indeed, above a certain level of

investment and complexity, requiring written contracts may be the norm in the business world,

rather than the exception.").

In this case, plaintiff alleges that the parties "entered into an exclusive licensing

agreement for the manufacture, marketing, and distribution" of defendants' entire fashion

clothing line under their Mudd brand in Mexico.  Complaint at ¶ 14.  The term is long, lasting at

least three years and possibly through the end of 2012. *See id.* at ¶¶ 22-23.  The amount at stake

is potentially millions of dollars, with minimum annual royalties ranging from $99,000 –

$195,000.  Complaint at Schedule B (setting minimum royalties through December 31, 2012).

Performance was to take place in a foreign country.  It is simply inconceivable that an agreement

relating to a licensed trademark, lasting for up to six years and involving at least hundreds of

thousands of dollars, would not be committed to writing. *See Adjustrite Systems, v. GAB*

*Business Services,* 145 F.3d at 551 (million dollar acquisition involving intellectual property

rights and five year employment terms "clearly was of the type that ordinarily would be

committed not only to a writing but to a formal contract complete with representations and

warranties and the other standard provisions usually found in sophisticated, formal contracts.).

*See also Winston v. Mediafare Entertainment Corp.*, 777 F.2d 78, 83 (2d Cir. 1985) (where "payment was to be made over several years based on a percentage of earnings," contract would usually be put in writing); *Solutia Inc. v. FMC Corp.*, 456 F.Supp.2d 429, 444 (S.D.N.Y. 2006) (Pauley, J.) (sophisticated parties contributing millions of dollars would memorialize their agreement in writing); *Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.*, 383 F.Supp.2d 428, 444-45 (S.D.N.Y. 2003) (Leisure, J.) (it "defies common sense that any sophisticated investor would" enter into a "complex, multi-stage package deal" without a writing).

*     *     *

In sum, consideration of the relevant factors demonstrates that, as a matter of law, there is no enforceable agreement. In light of plaintiff's anemic contract claim, it may attempt to defeat dismissal by referring to the October 9, 2006 press release (attached as Exhibit 2 to the Complaint) in which Iconix announced a licensing agreement with plaintiff. However, a single press release is patently insufficient to overcome all of the other relevant indicia that the parties did not intend to be bound prior to formal execution.

"The most important factor to consider … [is] the language of draft contracts or other exchanged documents." *Braun v. CMGI,* 2001 WL 921170 at *7. In this case, because "the language of the agreement is clear that the parties did not intend to be bound, the Court need look no further." *Cohen v. Lehman Brothers Bank, FSB*, 273 F.Supp.2d 524, 528 (S.D.N.Y. 2003) (Preska, J.). Even if the Court were to look beyond the plain words of the unsigned contract, however, there was no partial performance. In addition, the parties are sophisticated; the agreement was complex, involving intellectual property rights and substantial sums of money

10

over a long term; and performance was to be abroad. Such an agreement would, of necessity, be in writing. There is no binding contract.

## B.  The Statute of Frauds Bars Enforcement of the Alleged Contract

Plaintiff's claim of breach also fails for a second, independent reason:  the Statute of Frauds bars enforcement of the unsigned contract. "New York law provides that an agreement will not be recognized or enforceable if it is not in writing and 'subscribed by the party to be charged therewith' and if the agreement '[b]y its terms is not to be performed within one year from the making thereof.'" *Guilbert v. Gardner*, 480 F.3d 140, 151 (2d Cir. 2007) (*quoting* N.Y. Gen. Oblig. Law § 5-701(a)(1)[4]). "[T]he purpose of the statute is to raise a barrier to fraud when parties attempt to prove certain legal transactions that are deemed to be particularly susceptible to deception, mistake, and perjury." *Ohanian v. Avis Rent A Car System, Inc.*, 779 F.2d 101, 106 (2d Cir. 1985) (*citing D & N Boening, Inc. v. Kirsch Beverages*, 63 N.Y.2d 449, 453-54, 483 N.Y.S.2d 164, 165 (1984)).

Plaintiff admits that that there is no writing executed by defendants, Complaint at Exhibit 1 (annexing a "License Agreement" signed only by plaintiff), and that "[t]he term of the [purported] Agreement was approximately three years, nine months," Complaint at ¶ 22 – *i.e.,* not to be performed within one year. The alleged agreement is, therefore, barred by General Obligations Law § 5-701(a)(1).

Should plaintiff contend that the termination provisions contained in the unsigned agreement exempt it from the operation of the Statute of Frauds, that argument must fail because any possibility that the agreement will be terminated and thus fully performed within one year

---

[4] Section 5-701(a) of New York General Obligations Law states: "Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking … [b]y its terms is not to be performed within one year from the making thereof."

11

depends solely on acts within plaintiff's control. *See, e.g., Zaitsev v. Salomon Bros., Inc.*, 60

F.3d 1001, 1003 (2d Cir. 1995). "It has for many years been the law of New York that if both

parties have the right to terminate a contract at any time, the contract is not barred by the Statute

of Frauds. This is because the contract can be 'performed' within a year if either party has a

right to terminate it at any time." *Ohanian v. Avis Rent A Car*, 779 F.2d at 120 (Wyatt, D.J.,

*dissenting*) (*citing Blake v. Voight*, 134 N.Y. 69, 31 N.E. 256 (1892)).

However, "[i]f the right to terminate the agreement is limited to the plaintiff alone, while

the defendant's liability endures indefinitely … it has been held that the agreement is within the

statute, because it is illusory, from the point of view of the defendant, to consider the contract

terminable or performable within one year." *Abady v. Interco Inc.*, 76 A.D.2d 466, 471, 430

N.Y.S.2d 799, 802 (1st Dep't 1980). The Appellate Division, First Department explained the

reason for this rule as follows:

> … in such cases defendant's liability endures indefinitely, subject only to the
> uncontrolled voluntary act of the party who seeks to hold defendant. Under such
> circumstances **it is illusory, from the point of view of defendant, to consider
> the contract terminable or performable within one year**. And it is to the party
> to be charged, alone, namely the defendant, that the statute is designed to provide
> protection from fraud and perjury.

*Harris v. Home Indemnity Co.*, 6 A.D.2d 861, 861, 175 N.Y.S.2d 603, 604 (1st Dep't 1958)

(emphasis supplied). *See also Special Event Entertainment v. Rockefeller Center, Inc.*, 458

F.Supp. 72, 76 (S.D.N.Y. 1978) (Duffy, J.) (contract "where the option to renew is solely with

the plaintiff" is subject to the Statute of Frauds since the possibility of performance within one

year is out of the hands of the defendant, who would be left "without any protection from

possible fraud").

In this case, § 16.2 of the unsigned agreement would have given defendant IP

("Licensor") the right to terminate before the end of the "initial term" on December 31, 2009 if

plaintiff EF ("Licensor") did one of the following:

- suspended production, offer for sale, presentation or marketing activities of

  license products for a designated period, § 16.2(a);

- transferred more than 50% of its stock, substantially all of its assets, or merged,

  consolidated or reorganized, § 16.2(b);

- ceased business, § 16.2(c);

- became unable to meet its obligations as they come due, § 16.2(d);

- intentionally concealed revenues, knowingly maintained false books or records,

  defrauded or made false representations to IP, or knowingly submitted any

  substantially false reports to IP, § 16.2(e); or

- filed a bankruptcy petition or is adjudicated bankrupt, § 16.3.[5]

*See* Complaint at Exhibit 1 p. 8-9.  Thus, while "[i]t is technically true" that the alleged

agreement would have afforded IP the right to terminate that could have resulted in a fully

performed contract within one year, the Statute of Frauds still bars its enforcement because the

termination triggers rest in the hands of the party seeking to enforce the unsigned agreement –

the plaintiff.

The Second Circuit's decision in *Zaitsev v. Salomon Bros.* is directly on point.  In that

case, the Court of Appeals affirmed the dismissal of a breach of an oral contract claim, holding

the Statute of Frauds applicable to an alleged five year employment contract notwithstanding the

---

[5] The remaining grounds for termination cannot, by their very terms, occur within one year.  Specifically, the agreement allows defendant IP to terminate if sales "during any Annual Period" are less than 50% of "'Minimum Net Wholesale Sales' for such Annual Period" or if "by the beginning of the third Annual Period, Licenses [EF] has not commenced marketing Articles in reasonable commercial quantities ..." §§ 16.4, 16.5.

fact that the defendant retained the right to fire plaintiff if he engaged in conduct that resulted in the revocation of his work visa. 60 F.3d at 1003. The Court stated, "Under New York law ... if performance within one year depends upon an act solely within the control of the party seeking to enforce the oral agreement, the Statute of Frauds remains applicable." *Id.* (*citing Sawyer v. Sickinger*, 47 A.D.2d 291, 294, 366 N.Y.S.2d 435, 438 (1st Dep't 1975)).

Also illustrative is *Vanderbilt University v. Dipsters Corp.*, 1985 WL 9366 (S.D.N.Y. July 2, 1985) (Haight, J.), which involved an alleged oral agreement to repay a debt over a period longer than one year. The Court held the agreement unenforceable under the Statute of Frauds – notwithstanding the fact that the obligee, Vanderbilt University, could have ordered merchandise to offset the outstanding amount in less than one year – because it was up to Dipsters (the party seeking to enforce the alleged agreement) to decide whether to supply the merchandise and thereby pay off its indebtedness within the year. Rejecting Dipsters' efforts to enforce the oral agreement, Judge Haight wrote:

> It is technically true that the University would need to initiate the transaction by advising Dipsters of a need which Dipsters could satisfy from its inventory. But there is no reason to suppose that the University would pay money elsewhere for goods it could get from Dipsters for free. Dipsters, on the other hand, reserves the right, even under the agreement as it proclaims it, to decline to supply the University's needs. **Viewing the world in a common sense and practical manner – which the law should do if it can – Dipsters is able to control whether or not it will pay off its indebtedness within one year. That is sufficient to bring the agreement Dipsters relies upon within the statute of frauds, and hence unenforceable.**

1985 WL 9366 at *3 (emphasis supplied).

In this case, as in *Zaitsev*, IP retained the right to terminate the agreement, but only if plaintiff were to engage in conduct that frustrated the purpose of the anticipated agreement. *See* § 16.2. "Viewing the world in a common sense and practical manner," *Vanderbilt University v. Dipsters*, 1985 WL 9366 at *3, plaintiff alone had the power to determine whether it would

suspend production or marketing of licensed products, make false statements, merge, cease

business, or declare bankruptcy. *See* §§ 16.2, 16.3. If plaintiff did none of those things,

defendants could neither terminate nor fully perform the agreement within one year. Because

none of the termination triggers are within IP's control, "it is illusory, from the point of view of

defendant, to consider the contract terminable or performable within one year." *Harris v. Home

Indemnity*, 6 A.D.2d at 861, 175 N.Y.S.2d at 604. *See also Belfert v. Peoples Planning Corp. of

America*, 22 Misc.2d 753, 756, 199 N.Y.S.2d 839, 842-43 (Sup. Ct. N.Y. Co. 1959), *aff'd*, 11

A.D.2d 760, 202 N.Y.S.2d 101 (1st Dep't 1960), *aff'd*, 11 N.Y.2d 755, 226 N.Y.S.2d 693 (1962)

("An option in the defendant to terminate 'if plaintiff did not perform his duties properly' ...

does not serve to advance the period of fulfillment.") Accordingly, the unsigned agreement

alleged in the Complaint falls squarely within the ambit of the Statute of Frauds.

## C. Plaintiff Fails to Allege the Elements of a Tortious Interference Claim Against Iconix

Plaintiff's Second Claim for Relief alleges that Iconix caused IP to breach and repudiate

the unsigned agreement. Complaint at ¶¶ 40-44. In order to establish tortious interference with

an existing contract, a plaintiff must plead and prove, *inter alia*, "the existence of a valid contract

between plaintiff and a third party ..." *White Plains Coat & Apron Co., Inc. v. Cintas Corp.*, 460

F.3d 281, 285 (2d Cir. 2006) (citing *Foster v. Churchill*, 87 N.Y.2d 744, 749-50, 642 N.Y.S.2d

583, 586 (1996); *Israel v. Wood Dolson Co.*, 1 N.Y.2d 116, 120, 151 N.Y.S.2d 1, 5 (1956)). For

the very same reasons that plaintiff has failed to allege any enforceable contract with IP, *see*

POINTS (A), (B), it cannot, as a matter of law, establish that Iconix tortiously interfered with an

existing contract. *See, e.g., Italverde Trading, Inc. v. Four Bills of Lading Numbered LRNNN

120950, LRNNN 122950, LRNN 123580, MSLNV 254064*, 485 F.Supp.2d 187, 202 (E.D.N.Y.

2007) ("there is no question that Plaintiffs are required to establish that a contract was breached

in order to prevail"); *Buechner v. Avery*, 38 A.D.3d 443, 443, 836 N.Y.S.2d 1, 2 (1st Dep't 2007)

("claim for tortious interference with contract ... not viable absent an enforceable contract").

Further, even if the Complaint had alleged a valid contract, the tortious interference claim

fails for a second reason: plaintiff fails to allege that IP's decision not to sign the agreement and

Iconix' purported interference lacked justification. *See Jews for Jesus, Inc. v. Jewish Community*

*Relations Council of New York, Inc.*, 968 F.2d 286, 292 (2d Cir. 1992) ("To maintain a

successful cause of action for tortious interference with contract under New York law, a plaintiff

must allege and prove the existence of a valid contract and damages caused by the defendant's

knowing and intentional interference with that contract **without reasonable justification**.")

(emphasis supplied); *Joan Hansen & Co., Inc. v. Everlast World's Boxing Headquarters Corp.*,

296 A.D.2d 103, 107, 744 N.Y.S.2d 384, 388 (1st Dep't 2002) ("even if plaintiff could make out

a breach of contract by Boxing, the complaint fails to allege why the termination of Boxing's

contractual obligation to plaintiff is **without economic justification**.") (emphasis supplied).

The inadequacy of the tortious interference claim is particularly striking in light of the

significant fact that that Iconix is the parent company of IP. *See* Complaint at ¶ 11 ( "Defendant

IP is a limited liability company wholly owned and controlled by Iconix."); *id.* at ¶ 13 ("Iconix

controls IP ...")  In that regard, "one who has a financial interest in the business of another is

privileged to interfere with a contract between the other and a third party if his purpose is to

protect his own interests and if he does not employ improper means." *Conocophillips v. 261*

*East Merrick Road Corp.*, 428 F.Supp.2d 111, 123 (E.D.N.Y. 2006) (*citing Record Club of*

*America, Inc. v. United Artists Records, Inc.*, 611 F.Supp. 211, 217 (S.D.N.Y.1985); *Felsen v.*

*Sol Café Mfg. Corp.*, 24 N.Y.2d 682, 687, 301 N.Y.S.2d 610, 613 (1969)).  While the New York

courts have applied the economic interest doctrine in "an inconsistent manner," *White Plains*

16

*Coat & Apron v. Cintas*, 460 F.3d at 286, even under a narrow construction "**a corporate parent is privileged to interfere with the contractual relationships of its subsidiaries.**" *Id.* (*quoting Conocophillips v. 261 East Merrick Road*, 428 F.Supp.2d at 123) (emphasis supplied).

Plaintiff does not – and cannot, consistent with its obligations under Fed.R.Civ.P. 11 – allege any facts indicating that Iconix acted with malice or used wrongful means in causing its subsidiary, IP, not to proceed with plaintiff's contract. *See, e.g., Antonios A. Alevizopoulos and Associates, Inc. v. Comcast Intern. Holdings, Inc.*, 100 F.Supp.2d 178, 186 (S.D.N.Y. 2000) (Scheindlin, J.) ("pleadings may not be conclusory as the law requires some factual specificity in pleading tortious interference."); *CDR Creances S.A. v. Euro-American Lodging Corp.*, 40 A.D.3d 421,422, 837 N.Y.S.2d 609, 611 (1st Dep't 2007) ("tortious interference cause of action was deficient for failure to allege the required ... intent to induce a breach in nonconclusory fashion."). *See also Bell Atlantic v. Twombly*, 127 S.Ct. at 1965 n. 3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

Because plaintiff fails to allege adequately that Iconix acted without economic justification, the tortious interference claim is insufficient to survive a motion to dismiss. *See, e.g., Hirsch v. Food Resources, Inc.*, 24 A.D.3d 293, 297, 808 N.Y.S.2d 618, 622 (1st Dep't 2005) (tortious interference claim "deficient because, as holder of 83 1/3% of Food Resources' shares, [defendant] was also acting as an owner with an economic interest; absent allegations of malice or fraudulent or illegal means, no liability lies against him."); *E.F. Hutton Intern. Assoc. Ltd. v. Shearson Lehman Brothers Holdings, Inc.*, 281 A.D.2d 362, 362, 723 N.Y.S.2d 161, 162

(1st Dep't 2001) ("Shearson's interference with plaintiff's service agreements with E.F. Hutton &

Co. was justified by the economic interest that Shearson acquired in Hutton ...").

### D. Plaintiff Fails to Allege the Elements of a Claim of Interference with Prospective Business Advantage

New York law recognizes a tort based on interference with a nonbinding economic

relation that is separate from the tortious inducement to breach a binding agreement. *See, e.g.,*

*Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189, 785 N.Y.S.2d 359, 362 (2004) (*citing Guard-Life*

*Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 428 N.Y.S.2d 628 (1980) and *NBT*

*Bancorp Inc. v. Fleet/Norstar Financial Group, Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)).

"This tort is a difficult one to sustain, with requirements more demanding than those for

interference with [the] performance of an existing contract." *PKG Group, LLC v. Gamma*

*Croma, S.p.A.*, 446 F.Supp.2d 249, 251 (S.D.N.Y. 2006) (Rakoff, J.).

According to the New York Court of Appeals:

> The distinction thus made between the possible liability of a competitor for
> interference with performance of an existing contract and the more demanding
> requirements to establish liability for interference with prospective contractual
> relations reflects a recognition of the difference in the two situations in the
> relationship of the parties and in the substance and quality of their resulting
> interests; greater protection is accorded an interest in an existing contract (as to
> which respect for individual contract rights outweighs the public benefit to be
> derived from unfettered competition) than to the less substantive, more
> speculative interests in a prospective relationship (as to which liability will be
> imposed only on proof of more culpable conduct on the part of the interferer).

*Guard-Life*, 50 N.Y.2d at 191, 428 N.Y.S.2d at 632-33. *See also NBT Bancorp*, 87 N.Y.2d at

621, 641 N.Y.S.2d at 585 ("Where there has been no breach of an existing contract, but only

interference with prospective contract rights, however, plaintiff must show more culpable

conduct on the part of the defendant.").

"The sort of 'more culpable' conduct" that the Court of Appeals "had in mind in *NBT*" involves "[w]rongful means" such as "physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Carvel v. Noonan*, 3 N.Y.3d at 191, 785 N.Y.S.2d at 363 (*quoting Guard-Life*, 50 N.Y.2d at 191, 428 N.Y.S.2d at 632 and *citing* Restatement (Second) of Torts § 768, Comment e; § 767, Comment c). *See also PKG Group v. Gamma Croma*, 446 F.Supp.2d at 251 ("In all but the most egregious circumstances, 'dishonest, unfair, or improper means' must amount to misconduct that constitutes either a crime or an independent tort.").

Plaintiff's Third Claim for relief alleges that Defendants intentionally and wrongfully interfered with plaintiff's relationship with Mexican manufacturer Futuro Exports by repudiating plaintiff's unsigned agreement and entering into an exclusive licensing agreement directly with Futuro Exports. Complaint at ¶¶ 17(d), 46-47. These allegations fail to state a claim for relief for a host of reasons.

*First*, the Complaint contains no facts whatsoever suggesting any "wrongful conduct" by defendants. Entering into an exclusive licensing agreement with Futuro Exports instead of plaintiff does not constitute any crime or independent tort and falls far short of the violence, fraud or misrepresentation required for interference with a prospective business relationship. Conclusorily invoking the words "intentionally and wrongfully," Complaint at ¶ 47, is simply not sufficient to state a claim. *See, e.g., PKG Group v. Gamma Croma*, 446 F.Supp.2d at 251. *See also Bell Atlantic v. Twombly*, 127 S. Ct. at 1964-65 ("a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions ...") (internal quotations omitted).

19

*Second*, to the extent that the tortious interference with prospective business claim is premised on defendants' purported repudiation of the unsigned agreement, Complaint at ¶ 47, it fails because that is not conduct directed towards the third party, Futuro Exports. *See, e.g., Carvel v. Noonan*, 3 N.Y.3d at 192, 785 N.Y.S.2d at 363 ("As federal courts applying New York law have recognized, conduct constituting tortious interference with business relations is, by definition, conduct directed not at the plaintiff itself, but at the party with which the plaintiff has or seeks to have a relationship.") (citing cases); *Cardiocall, Inc. v. Serling*, --- F.Supp.2d ---, 2007 WL 1791643 at * 10 (E.D.N.Y. June 20, 2007) ("To sustain a claim plaintiff must prove some conduct directed at the party with whom the plaintiff has or seeks to have a business relationship; not merely conduct directed toward the plaintiff.").

*Third*, plaintiffs fail to allege "but for" causation. *See, e.g., Zikakis v. Staubach Retail Services, Inc.*, 2005 WL 2347852 at *4 (S.D.N.Y. 2005) (Buchwald, J.) ("A plaintiff also must allege that he would have entered into an economic relationship but for the defendant's wrongful conduct.") (internal quotations omitted). Although the Complaint suggests that plaintiff "had a business relationship with Futuro Exports" and that "Futuro Exports was one of the potential manufacturers that Gershon had identified to manufacture [defendants'] 'Mudd' branded blue jeans in Mexico," *see* Complaint at ¶¶ 17(d), 46, there is no indication of any specific contract or business relationship that Futuro Exports would have entered **with plaintiff** "but for" the defendants' actions. To the extent that plaintiff met and negotiated with Futuro Exports with an eye toward the manufacture of Mudd products, it did so solely **on behalf of defendants and as their representative**, pursuant to the parties' early 2006 oral agreement "to determine whether it would be profitable to exploit the Mudd trademark in Mexico ..." Complaint at ¶ 16. Unless and until plaintiff became a Mudd licensee – which never happened for all of the reasons set

20

forth above in POINTS (A) and (B) – plaintiff had no authority to enter into any contract with EF

(or anyone else) to manufacture jeans under that brand.  Defendants could not have interfered

with a relationship between plaintiff and Futuro Exports that did not yet exist.  *See, e.g., Camp*

*Summit of Summitville, Inc. v. Visinski*, 2007 WL 1152894 at * 14 (S.D.N.Y. Apr. 16, 2007)

(McMahon, J.) (complaint must allege "interference with a specific identified business

relationship with a third party.")  In the absence of allegations demonstrating that Futuro Exports

would have entered into a contractual relationship with plaintiff but for defendants' actions, the

claim must be dismissed.  *See, e.g., Berwick v. New World Network Intern., Ltd.*, 2007 WL

949767 at *14 (S.D.N.Y. March 28, 2007) (Koeltl, J.) (dismissing claim for tortious interference

with prospective contractual relations where "Complaint does not contain sufficient factual

allegations to support the requirement of pleading 'but-for' causation").

## CONCLUSION

For all of the reasons set forth above, plaintiff's Complaint fails to state a claim upon

which relief may be granted and must therefore be dismissed pursuant to Fed.R.Civ.P. 12(b)(6).

Dated: New York, New York
       July 20, 2007

                                        SPEARS & IMES LLP


                                        By:    Debra A. Karlstein
                                        51 Madison Avenue, 25th floor
                                        New York, New York 10010
                                        Tel: (212) 213-1715
                                        Fax: (212) 213-0849

                                        *Attorneys for Defendants Iconix Brand*
                                        *Group, Inc. and IP Holdings LLC*

21