Jared B. Stamell (JS 5225)
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 566-4047
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EXPORTACIONES DEL FUTURO S.A. DE C.V., <br><br>Plaintiff, <br><br>v. <br><br><br>ICONIX BRAND GROUP INC. and IP HOLDINGS, LLC, <br><br>Defendants. | Docket No. 07 Civ. 4145 <br><br><br><br>**MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS** |

**1. Introduction**

Defendants move under Rule 12(b)(6) to dismiss the complaint, which is about a contract. The contract authorized Plaintiff to exploit one of Defendants' trademarks (the "Mudd" trademark) to manufacture clothing in Mexico. *See* Complaint at ¶¶ 18-21.[1] Plaintiff alleges that Defendants breached the contract and interfered with Plaintiff's agreement, and interfered with prospective business opportunity with a local Mexican manufacturer. Complaint at ¶¶ 30-36. Defendants made a public announcement in press releases that they entered into the contract with Plaintiff. Complaint at ¶¶ 26-27. Nonetheless, Defendants' motion argues (a) that Plaintiff did not have a contract and (b) that

---

[1] Plaintiff's Complaint is Exhibit 1 to the declaration submitted by Defendants, and is referred to as "Complaint."

the claims are barred by the statute of frauds, since Defendants did not send a signed copy of the contract to Plaintiff.

The contract is Exhibit 1 to the Complaint. It was negotiated over a period of months during which the parties together visited Mexico. Plaintiff signed the contract on October 3, 2006 at Defendants' request, and immediately returned it to Defendants. Complaint at ¶ 24. On October 9, 2006, Defendants acknowledged by e-mail receipt of the signed agreement and separately announced in press releases that they had entered into the contract with Plaintiff. Complaint at ¶ 26 and Ex. 2 to the Complaint. Defendants' request for Plaintiff's signature and immediate return of the contract, followed a few days later by the e-mail and press releases, shows that the parties entered into the contract.

Defendants soon repudiated the contract. Complaint at ¶¶ 30-36. Plaintiff believes Defendants entered into a conflicting contract with the Mexican clothing manufacturer to which Plaintiff introduced Defendants in Mexico in order to cut out Plaintiff. Complaint at ¶¶ 31-32, 35. The allegations of the complaint sufficiently allege breach of contract and other claims and should not be dismissed.

**2. Statement of Facts**

In 2006, Plaintiff and Defendants negotiated a contract for the licensing, manufacture, and distribution of clothing in Mexico with the "Mudd" trademark. Complaint at ¶¶ 18-23. Plaintiff laid the groundwork for the agreement by, among other things, having its principal travel to Mexico with Defendants' representatives. Complaint at ¶¶ 16-18. At that time, he introduced Defendants to Future Exports, a potential manufacturer for branded blue jeans. Complaint at ¶ 17(d).

On October 3, 2006, after the terms of the contract were finalized, Defendants asked Plaintiff to sign the contract and return it. Plaintiff did so. Complaint at ¶ 24. On October 9, 2006, Plaintiff

2

received an e-mail from Defendants acknowledging receipt of the signed contract. Complaint at ¶ 25. On the same day, Defendants issued press releases on their web site and in the trade press announcing to the world that they had entered into the contract with Plaintiff. Complaint at ¶ 26, and Ex. 2 to the Complaint.

Later in October, Plaintiff heard from people in Mexico that Defendants' representatives claimed to have a direct contract with Future Exports for the same trademark. Complaint at ¶ 31. Plaintiff confronted Defendants by telephone, but Defendants denied any such contract. Complaint at ¶ 32. Nonetheless, Defendants refused to perform, and repudiated the contract. Complaint at ¶ 33-34. This suit followed.

**3. Argument**

    A.    <u>A Motion To Dismiss Should Be Granted Only If, Accepting All Allegations As True, Plaintiff Is Not Entitled To Any Relief</u>

In a Rule 12(b)(6) motion, a court accepts as true the complaint's factual allegations and draws all inferences in the plaintiff's favor. *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir. 1991). A complaint should only be dismissed if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 811 (1993).[2]

---

[2] Defendants cite to *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) and *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007), but they do not affect the Rule 12(b)(6) standard. They merely require a complaint to allege facts which if true entitle plaintiffs to the relief requested.

3

B.     The Complaint Contains Allegations That Entitle Plaintiff To The Relief Requested

Plaintiff made three claims: (1) breach of contract; (2) interference with contract by Defendant Iconix; and (3) interference with prospective business advantage by Defendants.

1.     Breach Of Contract

The contract provides for application of New York law. Complaint, Ex. 1 at ¶ 22.4. Under New York law a breach of contract claim requires identification of the "terms of the agreement, the consideration, the performance by plaintiffs and the basis of the alleged breach of the agreement by defendant." *Furia v. Furia*, 116 A.D.2d 694, 695 (2d Dept. 1986). Plaintiff alleges all these elements:

> 14. Plaintiff <u>entered into an exclusive licensing agreement</u> for the manufacture, marketing, and distribution of the "Mudd" line of fashion clothing in Mexico with Defendants. Defendants refused to perform, ordered Plaintiff not to perform, and entered into a second, conflicting agreement with another entity.
>
> ***
>
> 20.    By early October of 2006, <u>the parties agreed on the final terms and final form</u> of the Agreement. A copy of the Agreement is attached as Exhibit 1.
>
> 21.    The Agreement grants an exclusive license to Plaintiff to use the Mudd trademark in Mexico, and to manufacture, market, sell, and distribute products using the Mudd mark. See Ex. 1 at ¶ 1.
>
> 22.    The term of the Agreement was approximately three years, nine months, and would have continued through December 31, 2009. See Ex. 1 at ¶ 2.1.
>
> 23.    The Agreement was renewable, at the sole option of Plaintiff, for an additional three years, upon the fulfillment of minimum royalties and sales. See Ex. 1 at ¶ 2.2.

Complaint at ¶¶ 14, 20-23 (emphasis added). Defendants' theory is that no contract exists because Plaintiff does not have a copy signed by Defendants. However, the complaint alleges there was a

contract, that Defendants <u>agreed to the terms of the contract</u>, that Defendants confirmed the agreement via e-mail, and that Defendants <u>acknowledged entering into the contract</u> in press releases:

> 24. On October 3, 2006, Tarshis demanded that Gershon execute the Agreement on behalf of Plaintiff immediately and return it to Defendants. Gershon complied, signing and returning the executed Agreement promptly to Tarshis.
>
> 25. On October 9, 2006, Gershon received an e-mail note from Tarshis acknowledging receipt of the executed Agreement from Gershon.
>
> 26. On the same day, October 9, 2006, Iconix published a press release announcing that it had entered into an Agreement with the Plaintiff. A copy of the press release is attached as Exhibit 2.
>
> 27. On October 9, 2006, Reuters and the Associated Press stated that Iconix said it signed a license with Plaintiff to sell Mudd branded clothing, shoes and other products in Mexico.

Complaint at ¶¶ 24-27. Plaintiff attaches the contract as Exhibit 1 to the Complaint, and attaches Defendants' press release announcing the contract as Exhibit 2.

The consideration for the contract is evident from its terms: for the Plaintiff, the right to use the Mudd trademark; for the Defendants, royalties from Plaintiff as the products are sold. Complaint at ¶¶ 20-23 and the attached contract.

Finally, Plaintiff alleges its performance, and breach and repudiation by Defendants:

> 28. Plaintiff performed on the Agreement. For example, Gershon sought out and negotiated tentative agreements with third parties in Mexico for the manufacture, marketing, and distribution of the Mudd line.
>
> 29. Plaintiff at all times was ready, willing, and able to perform under the Agreement.
>
> \* \* \*
>
> 30. In October 2006, after the press releases had been issued, Tentler informed Gershon by telephone that Defendants did not want to proceed

5

>with the Agreement. Plaintiff protested and asked Tentler to meet with him. Plaintiff requested a meeting by e-mail.
>
>* * *
>
>33.   On November 3, 2006, Tarshis wrote Gershon an e-mail stating that "we have decided that it would not be in the interests of our company to sign a license agreement with you or Exportaciones del Futuro." The e-mail stated that "we ask that you immediately discontinue any discussions that you may be having with potential customers/suppliers regarding the Mudd brand and cancel any meetings that may have been scheduled in connection therewith." The e-mail further stated "Please be aware that you no longer have our permission or authorization to represent yourself or Exportaciones del Future [sic] as having a legitimate relationship with our company or the Mudd brand."
>
>* * *
>
>36.   Defendants have repudiated the agreement, and by entering into a conflicting agreement, have made it impossible for Plaintiff to perform the Agreement.
>
>* * *
>
>38.   Defendants breached and repudiated the Agreement, and are liable to Plaintiff for the damages Plaintiff has suffered, in an amount to be demonstrated at trial, but at least $5.7 million.

Complaint at 28-39, 30, 33, 36, 38.

Defendants argue that the Court should dismiss the complaint because Defendant did not return a signed copy of the contract.[3] However, Defendants' press release is enough to establish a contract, because Defendants acknowledge entering into the contract. Where a party admits the existence of a

---

[3] Defendant probably signed the contract. Plaintiff asked Defendant to produce the contract signed by Plaintiffs to show whether or not Defendants signed it, as well as why Defendants issued the press release. *See* July 24, 2007 Letter to Defendants' counsel, Stamell Affirmation, Exhibit 1. Defendant refused, and re-interpreted the request to avoid answering the questions as to whether Defendants signed the contract. *See* September 5, 2007 e-mail response from Defendant's counsel, Stamell Affirmation, Exhibit 2. However, the e-mail states that Defendants did not <u>send</u> a copy of the signed contract to Plaintiff. It <u>does not deny</u> that Defendants <u>signed</u> the contract.

contract, that contract is not subject to the Statute of Frauds. *Dzek v. Desco Vitroglaze of Schenectady Inc.*, 285 A.D.2d 926, 927 (3d Dept. 2001) (tape recorded conversation admitting existence of agreement overcomes statute of frauds defense); *Bono v. Cucinella*, 298 A.D.2d 483, 484 (2d Dept. 2002) (oral agreements that violate the statute of frauds are nonetheless enforceable where the party to be charged admits the existence of the agreement). And, the press release is an admission by Defendants under Federal Rule of Evidence 801(d)(2)(A) that it entered into the contract. *Libertad v. Welch*, 53 F.3d 428, 443 n. 12 (1st Cir. 1995) (press release is admissible evidence of a party admission); *Zeigler v. Fisher-Price, Inc.*, 302 F.Supp.2d 999, 1021 (N.D.Iowa 2004) (press release is an admission).

In any event, Defendants argument is premature in a Rule 12(b)(6) motion, which depends on allegations, not on evidence. *Digigan, Inc. v. Ivalidate, Inc.*, 2004 WL 203010 at *2 (S.D.N.Y. 2004) (no findings of fact at the Rule 12(b)(6) stage). Indeed, Defendants rely on the "four-part test" of *Adjustrite Systems* on "whether the parties to a preliminary agreement that called for execution of a formal instrument intended to be bound in the absence of such an executed final agreement." Defendants' Mem. at 3-4; *Adjustrite Systems, Inc. v. GAB Business Services, Inc.*, 145 F.3d 543, 549 (2d Cir. 1998). This is a factual test, applied in a summary judgment motion and at trial.[4] *Adjustrite Systems* involved a summary judgment motion. 145 F.3d at 545. *See also Consarc Corp. v. Marine*

---

[4] Of the fifteen cases that that Defendants cite in their *Adjustrite Systems* analysis, only one involves a stand-alone Rule 12(b)(6) motion, and that opinion warns that no motion should be granted "where the intent to be bound is not conclusively determinable based on the facts alleged in the complaint and the documents incorporated by reference, [otherwise] 'the issue of whether and when the parties intended to be bound is a factual issue that should [be] submitted to the jury.'" *Spencer Trask Software and Information Services LLC v. RPost Intern. Ltd.,* 383 F.Supp.2d 428, 439 (S.D.N.Y. 2003). All the others are cases in which the courts were making factual determinations, such as on summary judgment or after trial. All these cases are categorized in the attached Table A.

*Midland Bank, N.A.*, 996 F.2d 568, 576 (2d Cir. 1993) (where parties' intent to be bound is in dispute, the issue is a factual one.)

### 2. Interference With Contract By Iconix

Defendants also argue that Plaintiff has failed to "allege the elements of a tortuous interference claim" against Iconix (Defendants' Mem. at 15-18), but their argument largely depends on their earlier argument that no contract is alleged. Since Plaintiff does allege the existence of the contract, Defendants' argument fails. The elements of a claim for tortuous interference with contract are:

> (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'

*Star Direct Telecom, Inc. v. Global Crossing Bandwidth, Inc.*, 2007 WL 162763 at *9 (W.D.N.Y., Jan. 18, 2007). Plaintiff has pled all of these elements. Plaintiff's allegations about the existence of a contract are discussed in Section 3.B.1., above, and the point is realleged in Plaintiff's second claim for relief:

> 40.    In October of 2006, Plaintiff and IP entered into the Agreement, which was an advantageous business relationship for Plaintiff.

Complaint at ¶ 40. Plaintiffs allege that "Iconix controls IP and uses IP to hold title in trademarks that IP owns" (Complaint at ¶ 13) – in fact, it appears that IP is merely a shell corporation designed to hold Iconix' intellectual property – and therefore its actual knowledge of the agreement should be inferred. Plaintiff further alleges:

> 41.    To the extent that IP had a separate corporate existence from Iconix, Iconix caused IP to breach and repudiate the Agreement.
>
> 42.    Iconix therefore interfered with a contract between IP and Plaintiff.

>    43.    Iconix' interference with the contract between IP and Plaintiff
>           was intentional and improper.

Complaint at ¶¶ 41-43. Plaintiff therefore alleges that Iconix intentionally procured IP's breach, and that it was "improper," which means without justification. Defendants also showed their improper motive by going around Plaintiff to sign a conflicting agreement directly with Future Exports, the clothing manufacturer in Mexico to which Plaintiff had introduced Defendants during the parties' trip to Mexico. Complaint at ¶¶ 31-35. The actual breach of the contract is alleged as discussed above in Section 3.B.1. Finally, Plaintiff alleges damages from the breach. Complaint at ¶ 44. These allegations are sufficient.[5]

In any event, there was no justification for Defendants' breach and repudiation of the contract. Plaintiff performed and stood ready to continue to perform. *See* Complaint at ¶¶ 28-29.

### 3.    Interference With Prospective Business Advantage by Defendants

Finally, Defendants challenge Plaintiff's claim for interference with prospective business advantage. The tort of interference with prospective business advantage has four elements: (1) a business relationship with a third party; (2) defendants' knowledge of that relationship and intentional interference with it; (3) that defendants either acted solely out of malice or used wrongful means; and (4) that defendants' interference caused injury to the relationship with the third party. *Reading*

---

[5] Defendants also argue that Plaintiff cannot demonstrate interference with contract because IP and Iconix are in a subsidiary/parent relationship, and parents are privileged to interfere with relationships of subsidiaries. However, this is only true where the interference is justified. *Jews for Jesus, Inc. v. Jewish Community Relations Council of New York, Inc.*, 968 F.2d 286, 292 (2d Cir. 1992). There was no justification for interference here, and Defendants have not even claimed justification. In any case, these issues are factual, and are not for a Rule 12(b)(6) motion. Note that Defendants' leading case is *Jews for Jesus,* a summary judgment case involving a seven-part factual analysis. *Id.* at 292.

*International, Inc. v. Oaktree Capital Management LLC*, 2007 WL 39301 at *19 (S.D.N.Y., Jan. 8, 2007).

Plaintiff alleges each of these elements. Plaintiff alleges that it established a relationship with Future Exports as a potential manufacturer for the Mudd brand and that it introduced Defendants' representatives to Future Exports, thus demonstrating the relationship and Defendant's knowledge of the relationship. Complaint at ¶ 17(d). In reliance, Plaintiff also reached tentative agreement with Future Exports for the manufacture of Mudd products. Complaint at ¶ 28. After entering into the contract with Plaintiff, Defendants proceeded to try to cut Plaintiff out of the deal by negotiating directly with Future Exports. Then, when Plaintiff confronted them with this information, Defendants lied about their dealings. Complaint at ¶ 31-32, 35. This constitutes an unfair, wrongful practice. Allegations of wrongful dealings and false statements are sufficient to support a claim at the motion to dismiss stage, as Defendants' cited cases show. *See, e.g.*, *PKG Group, LLC v. Gamma Croma, S.p.A.*, 446 F.Supp.2d 249, 251 (S.D.N.Y. 2006) (cited in Defendants' Mem. at 18; holding that allegations of false statements were sufficient to demonstrate wrongful conduct and support a claim for tortuous interference).

### 4. Conclusion

For all the reasons stated above, Defendants' motion to dismiss should be denied.[6]

---

[6] In the event that the Court determines that one or more allegations should have been pled by Plaintiff, Plaintiff also seeks to amend the complaint.

Dated: New York, New York
September 6, 2007

                           Respectfully,

                           __/s/ Jared B. Stamell_____
                           Jared B. Stamell, Esq. (JS 5225)
                           STAMELL & SCHAGER, LLP
                           One Liberty Plaza, 35th Floor
                           New York, New York  10006
                           (212) 566-4047

                           *Attorneys for Plaintiff*

| Table A: *Adjustrite Systems Analysis - Cases Cited by Defendants* ||
|---|---|
| **Summary Judgment Cases** ||
| *Braun v. CMGI, Inc.*, 2001 WL 921170 (S.D.N.Y., Aug. 14, 2001) | Determining whether an oral agreement is legally binding on summary judgment |
| *Arcadian Phosphates Inc. v. Arcadian Corp.*, 884 F.2d 69 (2d Cir.1989) | Review of a determination whether a preliminary agreement was binding on summary judgment |
| *Stockalert, Inc. v. Nasdaq Stock Market, Inc.*, 1998 WL 556036 (S.D.N.Y. Sept. 1, 1998) | Determining whether a contract has been formed on a motion for summary judgment |
| *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69 (2d Cir. 1984) | Review of grant of summary judgment |
| *Multi-Juice, SA. v. Snapple Beverage Corp.*, 2006 WL 2548475 (S.D.N.Y. Sept. 1,2006) | Motion for partial summary judgment |
| *Brown v. Cara,* 420 F.3d 148 (2d Cir. 2005) | Appeal from grant of summary judgment |
| *Solutia Inc.* v. *FMC Corp.,* 456 F.Supp.2d 429 (S.D.N.Y. 2006) | Motion for summary judgment |
| **Enforcement Of Settlement Orders** ||
| *Ciaramella v. Reader's Digest Ass 'n, Inc.*, 131 F.3d 320 (2d Cir. 1997) | Reviewing court's decision to enforce an oral settlement agreement |
| *Cedric Kushner Promotions, Ltd. v. King*, 1999 WL 13732 (S.D.N.Y. Jan. 11, 1999) | Determination that an oral settlement agreement before the court was unenforceable |
| *Cruz v. OneSource Facility Services, Inc.*, 2005 WL 2923517 (S.D.N.Y. Nov. 4, 2005) | Motion to enforce settlement agreement |
| *Lindner v. American Exp. Corp.*, 2007 WL1623119 (S.D.N.Y. June 5, 2007) | Motion to enforce oral settlement agreement |
| *Winston* v. *Mediafare Entertainment Corp.,* 777 F.2d 78 (2d Cir. 1985) | Appeal from order to enforce settlement agreement |
| **Findings of Fact after Trial** ||
| *Simone v. N V Floresta, Inc.*, 1999 WL 429504 (S.D.N.Y. June 18, 1999) | Findings of fact after trial |
| **Mixed Motion to Dismiss and Summary Judgment, or Converted to Summary Judgment** ||
| *Beekman Investment Partners, L.P. v. Alene Candles, Inc.*, 2006 WL 330323 (S.D.N.Y. Feb. 14, 2006) | Motion to dismiss converted to summary judgment motion |
| *Kaplan v. Vincent*, 937 F.Supp. 307 (S.D.N.Y. 1996). | Mixed motion to dismiss and summary judgment motion |
| **State Cases** ||
| *Scheck v. Francis*, 26 N.Y.2d 466 (N.Y. 1970) | New York state case – not subject to Rule 12(b)(6) doctrine |