Jared B. Stamell (JS 5225)
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 566-4047

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXPORTACIONES DEL FUTURO S.A. DE C.V., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ICONIX BRAND GROUP INC. and : <br> IP HOLDINGS, LLC, : <br> : <br> Defendants : <br> : | Case No. 07 CIVIL 4145 (LBS) <br><br><br><br><br> **AMENDED COMPLAINT** |

Plaintiff alleges upon information and belief, except for allegations pertaining to those that are made on personal knowledge:

## JURISDICTION AND VENUE

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because all of the parties reside in jurisdictions diverse to one another, and because one of the parties is a citizen of a foreign state.

2. Plaintiff, Exportaciones del Futuro S.A. de C.V. ("EF" or "Plaintiff"), is a corporation under the laws of Mexico, having its principal place of business in Mexico.

3. Defendant Iconix Brand Group, Inc. ("Iconix"), is a corporation under the laws of the State of Delaware, having its principal place of business in New York.

4. Defendant IP Holdings, LLC ("IP"), is a limited liability company, created under the laws of the State of Delaware, having its principal place of business in Delaware. (Iconix and IP are collectively referred to here as "Defendants").

5. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

6. Venue is proper under 28 U.S.C. § 1391 because defendant Iconix has its principal place of business in the State of New York, and because the events and omissions giving rise to Plaintiff's claim occurred within the State of New York.

## PLAINTIFF

7. EF, the Plaintiff, is a corporation that manufactures, markets, and distributes products in Mexico.

8. Plaintiff's primary offices are at Enrique Wallon # 428 Primer Piso, Col. Rincon del Bosque, 11580 Mexico, D.F. Mexico.

## DEFENDANTS

9. Defendant Iconix is a corporation that is in the business of licensing trademarks, such as the Mudd trademark.

10. Iconix's principal place of business is 1450 Broadway, 4th Floor, New York, New York 10018.

11. Defendant IP is a limited liability company wholly owned and controlled by Iconix.

12. IP's principal place of business is 1950 Broadway, 4th Floor, New York, New York 10018.

13. Iconix controls IP and uses IP to hold title in trademarks that IP owns.

## FACTS

### The Agreement

14. Plaintiff entered into an exclusive licensing agreement for the manufacture, marketing, and distribution of the "Mudd" line of fashion clothing in Mexico with Defendants.  Defendants refused to perform, ordered Plaintiff not to perform, and entered into a second, conflicting agreement with another entity.

15. Mr. Joseph Gershon ("Gershon") is a principal of Plaintiff.

16. In early 2006, Gershon entered into an oral agreement with Iconix to determine whether it would be profitable to exploit the Mudd trademark in Mexico, and, if so, to license the trademark in Mexico for Iconix.  Iconix was represented by Mr. Andrew Tarshis ("Tarshis") and Ms. Gail Tentler ("Tentler").

17. Gershon did the following pursuant to that agreement over a period of several months:

   a. Traveled within and without Mexico to determine potential markets for products carrying the Mudd trademark;

   b. Met with potential manufacturers and distributors of Mudd products, and conducted negotiations with these potential manufacturers and distributors;

   c. Conducted further meetings with Tarshis and Tentler; and

   d. Traveled to Mexico with Tentler to meet with a company that manufactures denim clothing, known as "Future Exports."   Future Exports was one of the potential manufacturers that Gershon had identified to manufacture "Mudd" branded blue jeans in Mexico.

18. Gershon concluded that it would be profitable to sell goods in Mexico under the Mudd trademark, and the parties therefore negotiated an exclusive licensing agreement, under which Iconix licensed Plaintiff to manufacture, market, and distribute the Mudd line of fashion clothing in Mexico (the "Agreement").

19. Defendants were the primary drafters of the Agreement.

20. By early October of 2006, the parties agreed on the final terms and final form of the Agreement. A copy of the Agreement is attached as Exhibit 1.

21. The Agreement grants an exclusive license to Plaintiff to use the Mudd trademark in Mexico, and to manufacture, market, sell, and distribute products using the Mudd mark. *See* Ex. 1 at ¶ 1.

22. The term of the Agreement was approximately three years, nine months, and would have continued through December 31, 2009. *See* Ex. 1 at ¶ 2.1.

23. The Agreement was renewable, at the sole option of Plaintiff, for an additional three years, upon the fulfillment of minimum royalties and sales. *See* Ex. 1 at ¶ 2.2.

24. On October 3, 2006, Tarshis demanded that Gershon execute the Agreement on behalf of Plaintiff immediately and return it to Defendants. Gershon complied, signing and returning the executed Agreement promptly to Tarshis.

25. On October 9, 2006, Gershon received an e-mail note from Tarshis acknowledging receipt of the executed Agreement from Gershon.

26. On or about October 9, 2006, Defendants executed the Agreement.

27. Defendants kept the fully-executed Agreement in their files, and did not return a copy of the fully-executed version to Plaintiff.

~~25.~~28.     The fully-executed Agreement contained all the terms of the agreement between the parties.

~~26.~~29.     On the same day, October 9, 2006, Iconix published a press release announcing that it had entered into an Agreement with the Plaintiff.  A copy of the press release is attached as Exhibit 2.

~~27.~~30.     On October 9, 2006, Reuters and the Associated Press stated that Iconix said it signed a license with Plaintiff to sell Mudd branded clothing, shoes and other products in Mexico.

~~28.~~31.     Plaintiff performed on the Agreement.   For example, Gershon sought out and negotiated tentative agreements with third parties in Mexico for the manufacture, marketing, and distribution of the Mudd line.

~~29.~~32.     Plaintiff at all times was ready, willing, and able to perform under the Agreement.

### Repudiation of the Agreement

~~30.~~33.     In October 2006, after the press releases had been issued, Tentler informed Gershon by telephone that Defendants did not want to proceed with the Agreement.  Plaintiff protested and asked Tentler to meet with him.  Plaintiff requested a meeting by e-mail.

~~31.~~34.     In late October, one of Plaintiff's potential customers in Mexico informed Gershon that Future Exports – the potential manufacturer with whom Gershon had met regarding the manufacture of Mudd products – claimed that it had an exclusive license for the distribution of the Mudd line in Mexico.

~~32.~~35.     In late October or early November of 2006, Gershon telephoned Tarshis and asked whether Iconix had a license agreement with Future Exports for Mudd products.  Tarshis denied that Iconix had an agreement with Future Exports.

~~33.~~36.    On November 3, 2006, Tarshis wrote Gershon an e-mail stating that "we have decided that it would not be in the interests of our company to sign a license agreement with you or Exportaciones del Futuro." The e-mail stated that "we ask that you immediately discontinue any discussions that you may be having with potential customers/suppliers regarding the Mudd brand and cancel any meetings that may have been scheduled in connection therewith." The e-mail further stated "Please be aware that you no longer have our permission or authorization to represent yourself or Exportaciones del Future [sic] as having a legitimate relationship with our company or the Mudd brand."

~~34.~~37.    In November of 2006, Gershon wrote to Tarshis and requested an explanation of Defendants' failure to perform. Iconix did not respond until January 16, 2007, when Tarshis sent an e-mail to Gershon stating that the November 3 e-mail had been intended to state that "you had no authority or right to represent yourself or Exportaciones del Futuro as having any legitimate association with the Mudd brand or our company," and that Defendants have retained legal counsel and "have instructed them to proceed with legal action if you do not immediately discontinue all use (and/or mention) of the Mudd brand in your dealings."

~~35.~~38.    A third party that operates in Mexico has confirmed to Plaintiff that he has seen a copy of an agreement by Defendants for the manufacture of Mudd brand products in Mexico by Future Exports.

~~36.~~39.    Defendants have repudiated the agreement, and by entering into a conflicting agreement, have made it impossible for Plaintiff to perform the Agreement.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract by Defendants**

37.40.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 3936 of this Complaint as though fully set forth herein.

38.41.    Defendants breached and repudiated the Agreement, and are liable to Plaintiff for the damages Plaintiff has suffered, in an amount to be demonstrated at trial, but at least $5.7 million.

**SECOND CLAIM FOR RELIEF**
**Interference with Contract by Iconix**

39.42.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 4138 of this Complaint as though fully set forth herein.

40.43.    In October of 2006, Plaintiff and IP entered into the Agreement, which was an advantageous business relationship for Plaintiff.

41.44.    To the extent that IP had a separate corporate existence from Iconix, Iconix caused IP to breach and repudiate the Agreement.

42.45.    Iconix therefore interfered with a contract between IP and Plaintiff.

43.46.    Iconix' interference with the contract between IP and Plaintiff was intentional and improper.

44.47.    As a result, Iconix is liable for damages in an amount to be demonstrated at trial, but at least $5.7 million.

**THIRD CLAIM FOR RELIEF**
**Interference with Prospective Business Advantage by Defendants**

45.48.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 4744 of this Complaint as though fully set forth herein.

46.49.    Plaintiff had a business relationship with Future Exports, and Defendants knew of this relationship.

50. Defendants intentionally and wrongfully interfered with the relationship between Plaintiff and Future Exports by repudiating the Agreement, and by entering into an exclusive licensing agreement directly with Future Exports.

51.

Had Defendants not interfered with the relationship between Plaintiff and Future Exports, Plaintiff would have entered into agreements with Future Exports for the manufacture of goods.

48. As a result, Defendants are liable for the injury caused, in an amount to be demonstrated at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.    Adjudging Defendants to be jointly and severally liable to Plaintiff in an amount to be proven at trial, but at least $5.7 million, with interest, and

B.    Such other and further relief as this Court deems just and proper.

Dated:  Thursday, October 25, 2007

        STAMELL & SCHAGER, LLP


        By:_____
        Jared B. Stamell, Esq. (JS 5225)
        One Liberty Plaza, 35th Floor
        New York, New York  10006
        (212) 566-4047

*Attorneys for Plaintiff*