Jared B. Stamell (JS 5225)
STAMELL & SCHAGER, LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 566-4047

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

EXPORTACIONES DEL FUTURO S.A. DE C.V., :
                                                  :    Case No. 07 CIVIL 4145 (LBS)
Plaintiff,                                       :

          v.                                               :

ICONIX BRAND GROUP INC. and         :    **AMENDED COMPLAINT**
IP HOLDINGS, LLC,                         :

Defendants                                   :

---

Plaintiff alleges upon information and belief, except as to matters within its personal knowledge:

**JURISDICTION AND VENUE**

1. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, excluding interest and costs, and is between a citizen of a foreign state and citizens of a state.

2. Venue is proper under 28 U.S.C. § 1391 because defendants have their principal place of business in New York and because the events and omissions giving rise to plaintiff's claim occurred within New York.

## PARTIES

3. Plaintiff, Exportaciones del Futuro S.A. de C.V. ("EF" or "plaintiff"), is a Mexican corporation with its principal place of business in Mexico.

4. Defendant Iconix Brand Group, Inc. ("Iconix"), is a Delaware corporation with its principal place of business in New York.

5. Defendant IP Holdings, LLC ("IP"), is a limited liability company, created under the laws of the State of Delaware, having its principal place of business in Delaware. (Iconix and IP are collectively referred to here as "defendants").

## FACTS

### The Agreement

6. Defendants own the trademark for "Mudd."

7. In October 2006, plaintiff and defendants entered into an exclusive licensing agreement for the manufacture, marketing, and distribution of the "Mudd" line of clothing by plaintiff in Mexico (the "Agreement"). Defendants subsequently refused to perform the Agreement, ordered plaintiff not to perform, and entered into a second, conflicting agreement with another entity.

8. Mr. Joseph Gershon ("Gershon") is a principal of plaintiff.

9. In early 2006, Gershon entered into an oral agreement with Iconix to determine whether it would be profitable to exploit the Mudd trademark in Mexico, and, if so, to license the trademark in Mexico from Iconix. Iconix was represented by Mr. Andrew Tarshis ("Tarshis") and Ms. Gail Tentler ("Tentler").

10. Gershon did the following pursuant to that agreement over a period of several months:

    a. Traveled within and without Mexico to determine potential markets for products carrying the Mudd trademark;

    b. Met with potential manufacturers and distributors of Mudd products, and conducted negotiations with these potential manufacturers and distributors; and

    c. Conducted further meetings with Tarshis and Tentler;

11. Gershon also traveled to Mexico with Tentler, and introduced Tentler to a company that manufactures denim clothing, known as "Future Exports."

12. Future Exports was one of the potential manufacturers that Gershon had identified to manufacture "Mudd" branded blue jeans in Mexico.

13. Future Exports was a valuable business contact for Gershon as an economical manufacturer of clothing. Gershon planned to use Future Exports for manufacture of clothing under the Agreement, and also to use them for manufacturing clothing under other license agreements.

14. Gershon concluded that it would be profitable to sell goods in Mexico under the Mudd trademark, and the parties negotiated an exclusive licensing agreement to do this.

15. Defendants were the primary drafters of the Agreement.

16. By early October of 2006, the parties agreed on the final terms and final form of the Agreement. A copy of the Agreement is attached as Exhibit 1.

17. The Agreement grants an exclusive license to plaintiff to use the Mudd trademark in Mexico, and to manufacture, market, sell, and distribute products using the Mudd mark. *See* Ex. 1 at ¶ 1.

18. The term of the Agreement was approximately three years, nine months, and would have continued through December 31, 2009. *See* Ex. 1 at ¶ 2.1.

19. The Agreement was renewable, at the sole option of plaintiff, for an additional three years, upon the fulfillment of minimum royalties and sales. *See* Ex. 1 at ¶ 2.2.

20. On October 3, 2006, Tarshis demanded that Gershon immediately execute the Agreement on behalf of plaintiff and return it to defendants. Gershon complied, signing what Iconix presented as the "execution copy" and returning the Agreement to Tarshis on October 3.

21. Six days later, on October 9, 2006, Gershon received an e-mail note from Tarshis acknowledging receipt of the executed Agreement from Gershon.

22. On October 9, 2006, Reuters and the Associated Press reported that Iconix said it had signed a license with plaintiff to sell Mudd branded clothing, shoes and other products in Mexico.

23. By October 9, 2006, defendants had executed the Agreement.

24. Defendants kept the fully-executed Agreement in their files.

25. The fully-executed Agreement contained all the terms of the agreement between the parties.

26. On October 9, 2006, Iconix published a press release announcing that it had entered into the Agreement with the plaintiff. A copy of the press release is attached as Exhibit 2.

27. Plaintiff performed the Agreement. For example, Gershon sought out and negotiated agreements with third parties in Mexico for the manufacture, marketing, and distribution of the Mudd line that were subject to approval by defendants under the Agreement.

28. Plaintiff at all times was ready, willing, and able to perform, and did perform, the Agreement.

### Repudiation of the Agreement

29. Late in October 2006, Tentler informed Gershon by telephone that defendants did not want to proceed with the Agreement. Plaintiff protested and asked Tentler to meet with him. Plaintiff also requested a meeting by e-mail.

30. Defendants rebuffed plaintiff's requests to meet, and expressly repudiated and refused to perform the Agreement.

31. On or about October 27, 2006, one of the third parties with whom plaintiff was negotiating in Mexico, informed Gershon that Future Exports – the potential manufacturer whom Gershon had introduced to defendants – claimed that it had an exclusive license with defendants for the distribution of the Mudd line in Mexico.

32. On or about mid-November of 2006, Gershon telephoned Tarshis and asked whether Iconix had a license agreement with Future Exports for Mudd products. Tarshis denied that Iconix had an agreement with Future Exports.

33. The third party in Mexico eventually confirmed to plaintiff that he has seen a copy of an agreement between defendants and Future Exports for the manufacture of Mudd brand products in Mexico.

34. Before defendants repudiated the Agreement, Gershon had reached agreements with third parties for the manufacture and distribution of Mudd branded products under the Agreement. During those negotiations, in reliance on defendants' statements, Gershon represented that plaintiff had entered into an agreement with defendants for the manufacture of such products.

35. For example, plaintiff reached and signed an agreement for the manufacture of Mudd products with Daniel Araf, which guaranteed sales of over one million United States dollars. Upon defendants' repudiation of the Agreement, plaintiff was forced to cancel the agreement with Daniel Araf. Plaintiff suffered monetary damages to do so.

36. Defendants' repudiation of the Agreement, coming, as it did, after defendants' public announcement of entering into the Agreement, also harmed plaintiff's reputation with several Mexican

companies. For example, Daniel Araf, Comercial Mexicana, and Coppel Stores are companies that stated that they intended to do business with plaintiff, but which have refused to do so as a result of defendants' repudiation of the Agreement.

### FIRST CLAIM FOR RELIEF
### Breach of Contract by Defendants

37. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 36 of this Complaint as though fully set forth herein.

38. Defendants repudiated the Agreement by refusing to perform and by entering into a conflicting agreement, making it impossible for plaintiff to perform the Agreement.

39. As a result, defendants breached and repudiated the Agreement, and are liable to plaintiff for the damages plaintiff has suffered, in an amount to be demonstrated at trial, but at least $5.7 million.

### SECOND CLAIM FOR RELIEF
### Interference with Contract by Iconix

40. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 39 of this Complaint as though fully set forth herein.

41. In October 2006, plaintiff and IP entered into the Agreement, which was an advantageous business relationship for plaintiff.

42. To the extent that IP had a separate corporate existence from Iconix, Iconix caused IP to breach and repudiate the Agreement.

43. Iconix therefore interfered with a contract between IP and Plaintiff.

44. Iconix' interference with the contract between IP and plaintiff was intentional and improper.

45. As a result, Iconix is liable for damages in an amount to be demonstrated at trial, but at least $5.7 million.

## THIRD CLAIM FOR RELIEF
### Injurious Falsehood

46. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47. Defendants intentionally published false information regarding plaintiff's business to Future Exports, stating, among other things, that plaintiff never had an agreement for Mudd and would not be a trustworthy business partner.

48. Defendants conveyed false information about plaintiff maliciously and/or with reckless disregard for truth, with the intention of compromising plaintiff's business position with Future Exports and other companies in Mexico.

49. Defendants' actions actually did compromise plaintiff's business position with Future Exports, and also caused harm to plaintiff's business reputation in Mexico.

## FOURTH CLAIM FOR RELIEF
### Quantum Meruit

50. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 49 of this Complaint as though fully set forth herein.

51. By establishing the profitability of exploiting the Mudd brand in Mexico, at defendants' request and expending its own money and resources to do so, plaintiff conferred benefits on defendants.

52. As a result, plaintiff is entitled to recover from defendants the reasonable value of its services.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment as follows:

A.  Adjudging defendants jointly and severally liable to plaintiff for the damages it sustained in an amount to be proven at trial, but at least $5.7 million, with interest, and

B.  Awarding plaintiff the costs and disbursements of the action, and such other and further relief as the Court deems just.

Dated: New York, New York
       November 19, 2007

STAMELL & SCHAGER, LLP

By: _____
Jared B. Stamell, Esq. (JS 5225)
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 566-4047

*Attorneys for Plaintiff*