UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
EXPORTACIONES DEL FUTURO        :
S.A. DE C.V.,                   :
                                :
                   Plaintiff,   :
                                :
                                :        **MEMORANDUM AND ORDER**
                                :        07 Civ 4145 (LBS)
          v.                    :
                                :
ICONIX BRAND GROUP INC. and     :
IP HOLDINGS, LLC,               :
                                :
                   Defendants.  :
-----------------------------------------------------------x

SAND, J.,

Before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in this suit for breach of contract, tortuous interference with the alleged contract, and tortuous interference with plaintiff's prospective business advantage. The underlying facts of this suit stem from a negotiation over a contract for licensing the "Mudd" trademark to manufacture clothing in Mexico. Plaintiff alleges that a contract existed, and that defendants wrongfully breached it. For the reasons discussed below, the Court grants the motion to dismiss.

I. FACTUAL BACKGROUND[1]

In early 2006, Exportaciones Del Futuro S.A. de C.V. ("Exportaciones") principal Joseph Gershon entered into an oral agreement with defendants to determine whether it would be profitable to license their "Mudd" trademark in Mexico. In order to make that

---

[1] The following facts are drawn from the complaint, except where noted. Because this is a motion to dismiss, the Court will consider all material factual allegations as true and draw all reasonable inferences in favor of the plaintiff. Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999).

determination, Gershon traveled to Mexico to investigate potential markets for Mudd products, met and negotiated with potential manufacturers and distributors, and attended a meeting with defendants' representatives and a denim manufacturer, Future Exports.

After this initial investigation, the parties entered into negotiations for a written agreement that would grant Exportaciones an exclusive license to manufacture, market and distribute the Mudd line of clothing in Mexico. The agreement would have spanned from the date of enactment through December 2009, and was potentially renewable for an additional three year period at plaintiff's option.

On October 3, 2006, defendants asked plaintiff to sign and return the final contract, and plaintiff did so. On October 9, 2006, defendants issued a press release on their website and in trade press announcing that they had entered into a contract with plaintiff. However, defendants did not sign the formal contract. Rather, defendants advised Gershon, both verbally and in writing, that they did not intend to sign the contract.

Plaintiff alleges that defendants made direct contract with a third party, Future Exports, and entered into an exclusive licensing agreement with it. Plaintiff confronted defendants with that information, and defendants denied any such contract. However, defendants refused to comply with the terms of their unsigned contract with plaintiff, and plaintiff has brought this suit for damages based on that alleged breach.

II. STANDARD FOR MOTION TO DIMSISS UNDER RULE 12(b)(6)

A court reviewing a complaint under Fed. R. Civ. P. 12(b)(6) will consider all material factual allegations as true and draw all reasonable inferences in favor of the

2

plaintiff. Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999). The complaint will be dismissed "only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Thomas v. City of New York, 143 F.3d 31, 36-37 (2d Cir. 1998). The court is not limited to the four corners of the complaint; it may also consider "documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." Brass v. American Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993).

III. THE SECOND CIRCUIT'S ADJUSTRITE FACTORS DO NOT SUPPORT FINDING A BINDING CONTRACT

The Second Circuit in Adjustrite set out a four-factor test for determining "whether the parties to a preliminary agreement that called for execution of a formal instrument intended to be bound in the absence of such an executed final instrument." Adjustrite Systems, Inc. v. GAB Business Services, Inc., 145 F.3d 543, 549 (2d Cir. 1998). In determining whether a binding instrument exists, "[t]he key, of course, is the intent of the parties: whether the parties intended to be bound, and if so, to what extent. Id. at 548-9. The factors to consider in making this determination are as follows:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id. at 549. Here, defendants concede that factor (3) is satisfied, but argue that the other three factors are not, and thus the Court should not find that the parties intended to be

3

bound in the absence of a formal, signed agreement. The Court agrees that factors 1, 2 and 4 weigh strongly against finding that an agreement exists under these circumstances.

A. The Language of the Agreement

"The first factor, the language of the agreement, is 'the most important.'" Adjustrite, 145 F.3d at 549 (citing Arcadian Phosphates, Inc. v. Arcadian Corp., 884 F.2d 69, 72 (2d Cir. 1989)). Here, the Court agrees with defendants that there are sufficient indications in the agreement itself that the parties did not intend to be bound before the agreement was signed.

First, the existence of a merger clause in the agreement strongly suggests that the parties did not wish to be bound if the agreement was not signed. See Ciaramella v. Reader's Digest Ass'n., 131 F.3d 320, 324 (2d Cir. 1997) ("The presence of ... a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.").

Furthermore, the final draft of the unsigned agreement was marked as the "Execution Copy," which is evidence that the parties intended to be bound when the agreement was "executed," and not before. Cedric Kushner Promotions, Ltd. v. King, 1999 U.S. Dist. LEXIS 90 *1, *4 (S.D.N.Y. Jan. 11, 1999) ("This Court interprets the use of the terms 'execution' and 'draft' as evidence that the parties did not intend to be bound in the absence of a signed writing.").

B. Partial Performance

4

The second factor under <u>Asjustrite</u> is whether there has been any partial performance of the agreement. No evidence of partial performance exists here. Plaintiff contends that Gershon's travels in Mexico and meetings with potential manufacturers and distributors equate to partial performance of the contract. But plaintiff's complaint makes clear that these actions were undertaken in order "to determine whether it would be profitable to exploit the Mudd trademark in Mexico," before the parties even agreed to negotiate the terms of the ultimate licensing agreement. (Compl. ¶ 16-17). Such activity cannot be interpreted as partial performance on a contract that had not yet been negotiated. See <u>Multi-Juice, S.A. v. Snapple Beverage Corp.</u>, 2006 WL 2548475 *1, *6 (S.D.N.Y. Sept 1, 2006) ("it is much more likely" that plaintiffs' conduct was "in anticipation of finalizing a written distribution agreement" rather than partial performance of an alleged unsigned agreement.").

C. Type of Contract

"The fourth and final factor is whether the Agreement is the type of contract that is usually committed to writing." <u>Adjustrite</u>, 145 F.3d at 549. In making this inquiry, the Second Circuit noted that courts should consider "the size of the transaction, the nature of the assets being purchased, and the length of the contemplated ... contracts." <u>Id.</u> Here, these factors overwhelmingly suggest that this type of contract would be put into a formal writing. The contract was an exclusive license in a foreign country, worth potentially millions of dollars, and lasting up to six years. (Compl. at ¶ 22-23, Schedule B). This is clearly the type of contract that would ordinarily be memorialized in a formal written agreement. See <u>Adjustrite</u>, 145 F.3d at 549 (holding that a "million-dollar acquisition"

5

involving employment contracts that spanned five years was "clearly was of the type that ordinarily would be committed not only to a writing but to a formal contract complete with representations and warranties and the other standard provisions usually found in sophisticated, formal contracts.").

In sum, although the parties admit that they agreed to the terms of the agreement, the other three factors in the Adjustrite test patently indicate that the parties did not intend for their agreement to be binding before the contract was signed. Accordingly, this Court finds that the parties did not intend to be bound before the agreement was signed.

IV. STATUTE OF FRAUDS

Even setting aside the Adjustrite factors, the agreement is still barred by the Statute of Frauds. New York's Statute of Frauds states that "[e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking ... [b]y its terms is not to be performed within one year from the making thereof." NY Gen. Oblig. Law § 5-701(a). Because the licensing agreement would have spanned a minimum of three years, it is subject to the Statute of Frauds and therefore unenforceable unless in writing.

Plaintiff attempts to circumvent the writing requirement by arguing that defendants' press release announcing the contract can be used to demonstrate that defendants admitted the existence of the agreement, thereby satisfying the Statute of

6

Frauds.[2] The Statute provides that "[t]here is sufficient evidence that a contract has been made if" one of four exceptions applies and the contract is a "qualified financial contract" as defined in the statute.

"Under Section 5-701(b)(2) a 'qualified financial contract' includes, among other things, agreements for the purchase and sale of foreign currency, currency and commodity options and swaps, and the sale or trade of indebtedness." Argent Elec., Inc. v. Cooper Lighting, Inc., 2005 U.S. Dist. LEXIS 18689 *1, *17 (S.D.N.Y. Aug. 31, 2005). See also § 5-701(b)(2) (listing specific contracts which constitute "qualified financial contracts"). The licensing agreement at issue here is not a "qualified financial contract" because it does not fall under any of the categories enumerated in the statute. Because it is not a qualified financial contract, none of the exceptions in section (b) apply to defendants' press release.

Finally, even if the exceptions in section (b) did apply, defendants' press release would not suffice to satisfy the Statute of Frauds' requirements.[3] The Statute states that a contract will be enforced without a writing if "[t]here is a note, memorandum or other writing sufficient to indicate that a contract has been made, signed by the party against whom enforcement is sought or by its authorized agent or broker."[4] NY Gen. Oblig. Law § 5-701(b)(3). The Statute also notes that a "note, memorandum or writing is not insufficient because it omits or incorrectly states one or more material terms agreed upon, so long as such evidence provides a reasonable basis for concluding that a contract was

---

[2] Although plaintiff cites only case law for this proposition, the Court will assume that plaintiff means to argue that the press releases entitles them to statutory exemption from the writing requirement under § 5-701(b).

[3] Because the contract cannot satisfy the writing requirement under the Statute of Frauds, the Court need not consider whether delivery of the written contract is also required.

[4] Because the Statute clearly indicates that a writing may be signed by an "authorized agent," the Court concludes that defendants' argument that the press release cannot be used to satisfy the Statute of Frauds because it was not signed by IP Holdings must fail.

made." Id. However, although it may omit "one or more" material terms, the additional writing still must contain at least *some* of the "essential terms" of the contract in order to satisfy the Statute of Frauds. See Spencer Trask Software & Info. Servs. LLC v. Rpost Int'l, Ltd., 383 F. Supp. 2d 428 (S.D.N.Y. 2003) (holding that the Statute of Frauds exception for judicial admissions did not apply because "the defendants did not make any admission regarding the precise terms of the alleged agreement"); Concordia Gen. Contr. v. Peltz, 11 A.D.3d 502 (N.Y. App. Div. 2004) ("[t]he defendant's admission of the existence and essential terms of the oral agreement was sufficient to take the agreement outside the scope of the Statute of Frauds") (internal quotation marks omitted); Fleet Bank v. Pine Knoll Corp., 290 A.D.2d 792 (N.Y. App. Div. 2002) ("A party seeking to avoid application of the statute of frauds must demonstrate some exception thereto, such as an admission by the other party to the essential terms and actual existence of the oral contract"); Carter, Macy & Co. v. Matthews, 220 A.D. 679 (N.Y. App. Div. 1927) ("In order to satisfy the requirements of the Statute of Frauds the written note or memorandum must include all the terms of the completed contract which the parties made") (quoting Poel v. Brunswick-Balke-Collender Co., 216 N.Y. 310 (N.Y. 1915)). Defendants' press release, although acknowledging the existence of a contract, contains none of its essential terms and therefore cannot satisfy the writing requirement under the Statute of Frauds.

V.  CONCLUSION

For the reasons stated above, all claims against defendant Iconix Brand Group Inc and IP Holdings LLC are DISMISSED.

SO ORDERED.

Dated:   New York, New York

October 10, 2007

_____
Leonard B. Sand
U.S.D.J.