Debra A. Karlstein
SPEARS & IMES LLP
51 Madison Avenue, 25th floor
New York, New York 10010
Tel: (212) 213-1715
Fax: (212) 213-0849
*Attorneys for Defendants Iconix Brand Group, Inc. and IP Holdings LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
EXPORTACIONES DEL FUTURO S.A. DE C.V., :
:
Plaintiff,  :   Docket No. 07 Civ 4145
- against -    :
:   **ANSWER AND**
ICONIX BRAND GROUP INC. and   :   **COUNTERCLAIMS**
IP HOLDINGS, LLC,    :
:
Defendants.   :
-----------------------------------------------------------------x

      Defendants ICONIX BRAND GROUP, INC. ("Iconix") and IP HOLDINGS LLC ("IP"), by their undersigned attorneys, hereby answer Plaintiff's Amended Complaint dated November 19, 2007 ("Complaint") as follows:

      1.      Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 1 of the Complaint except admit that defendants are citizens of states.

      2.      Deny the allegations set forth in paragraph 2 of the Complaint except admit that defendant Iconix has its principal place of business in New York.

      3.      Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 3 of the Complaint.

      4.      Admit the allegations set forth in paragraph 4 of the Complaint.

      5.      Admit the allegations set forth in paragraph 5 of the Complaint.

6. Admit that defendant IP owns the trademark for "Mudd" as set forth in paragraph 6 of the Complaint.

7. Deny the allegations set forth in paragraph 7 of the Complaint.

8. Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 8 of the Complaint.

9. Deny the allegations set forth in paragraph 9 of the Complaint.

10. Deny the allegations set forth in paragraph 10 of the Complaint.

11. Admit the allegations set forth in paragraph 11 of the Complaint.

12. Deny the allegations set forth in paragraph 12 of the Complaint. Affirmatively allege that Gershon represented that he was a principal of Future Exports and that he identified Future Exports as the factory that would manufacture Mudd branded blue jeans in Mexico.

13. Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 13 of the Complaint.

14. Deny the allegations set forth in paragraph 14 of the Complaint, and affirmatively allege that Gershon intentionally misled defendants into believing that they were negotiating an exclusive licensing agreement with Future Exports, the manufacturer with whom Gail Tentler had met in Mexico.

15. Admit the allegations set forth in paragraph 15 of the Complaint.

16. Deny the allegations set forth in paragraph 16 of the Complaint, and affirmatively allege that the parties never came to a meeting of the minds with respect to the final terms and final form of a licensing agreement since Gershon intentionally misled defendants into believing that they were negotiating an exclusive licensing agreement with Future Exports.

17. Deny the allegations set forth in paragraph 17 of the Complaint.

18. Deny the allegations set forth in paragraph 18 of the Complaint since there is no enforceable agreement, and respectfully refer the Court to the draft annexed as Exhibit 1 to the Complaint for examination of its terms.

19. Deny the allegations set forth in paragraph 19 of the Complaint since there is no enforceable agreement, and respectfully refer the Court to the draft annexed as Exhibit 1 to the Complaint for examination of its terms.

20. Deny the allegations set forth in paragraph 20 of the Complaint, except admit that Gershon signed and returned a draft to defendants.

21. Admit the allegations set forth in paragraph 21 of the Complaint.

22. Admit the allegations set forth in paragraph 22 of the Complaint.

23. Deny the allegations of paragraph 23 of the Complaint.

24. Deny the allegations set forth in paragraph 24 of the Complaint.

25. Deny the allegations set forth in paragraph 25 of the Complaint.

26. Deny the allegations set forth in paragraph 26 of the Complaint and respectfully refer the Court to press release annexed as Exhibit 2 to the Complaint for examination of its terms.

27. Deny the allegations set forth in paragraph 27 of the Complaint and affirmatively allege that plaintiff breached, and did not perform, the license agreement.

28. Deny the allegations set forth in paragraph 28 of the Complaint and affirmatively allege that plaintiff breached, and did not perform, the license agreement.

29. Admit the allegations set forth in paragraph 29 of the Complaint.

30. Deny the allegations set forth in paragraph 30 of the Complaint.

31. Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 31 of the Complaint.

32. Admit the allegations set forth in paragraph 32 of the Complaint.

33. Deny knowledge and information sufficient to determine the truth of the allegations set forth in paragraph 33 of the Complaint.

34. Deny the allegations set forth in paragraph 34 of the Complaint.

35. Deny the allegations set forth in paragraph 35 of the Complaint.

36. Deny the allegations set forth in paragraph 36 of the Complaint.

37. In response to the allegations set forth in paragraph 37 of the Complaint, repeats and realleges the allegations set forth in paragraphs 1-36 above as if fully set forth herein.

38. Deny the allegations set forth in paragraph 38 of the Complaint.

39. Deny the allegations set forth in paragraph 39 of the Complaint.

40. In response to the allegations set forth in paragraph 40 of the Complaint, repeats and realleges the allegations set forth in paragraphs 1-39 above as if fully set forth herein.

41. Deny the allegations set forth in paragraph 41 of the Complaint.

42. Deny the allegations set forth in paragraph 42 of the Complaint.

43. Deny the allegations set forth in paragraph 43 of the Complaint.

44. Deny the allegations set forth in paragraph 44 of the Complaint.

45. Deny the allegations set forth in paragraph 45 of the Complaint.

46. In response to the allegations set forth in paragraph 46 of the Complaint, repeats and realleges the allegations set forth in paragraphs 1-45 above as if fully set forth herein.

47. Deny the allegations set forth in paragraph 47 of the Complaint.

48. Deny the allegations set forth in paragraph 48 of the Complaint.

49. Deny the allegations set forth in paragraph 49 of the Complaint.

50. In response to the allegations set forth in paragraph 50 of the Complaint, repeats and realleges the allegations set forth in paragraphs 1-49 above as if fully set forth herein.

51. Deny the allegations set forth in paragraph 51 of the Complaint.

52. Deny the allegations set forth in paragraph 52 of the Complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

53. Plaintiff's Complaint fails to state a cause of action.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

54. Plaintiff's claims for breach of contract and interference with contract fail because there exists no valid contract between the parties.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

55. Plaintiff's claims are barred by the Statute of Frauds.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

56. Plaintiff fraudulently induced defendants to enter into a license agreement, which is therefore void.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

57. Plaintiff's breach of contract claim is barred by its own prior breach of the parties' agreement.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

58. Plaintiff's claims are barred by the Statute of Limitations.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

59. Plaintiff's claims are barred by waiver.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

60. Plaintiff's claims are barred by estoppel.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

61. Plaintiff's claims are barred by laches.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

62. Plaintiff's claims are barred by unclean hands.

### AS AND FOR A ELEVENTH AFFIRMATIVE DEFENSE

63. Plaintiff's damages, if any, are speculative and cannot be established with reasonable certainty.

### FACTS COMMON TO ALL COUNTERCLAIMS

**Introduction**

64. Plaintiff's principal, Joseph Gershon, attempted to induce defendants to enter into an exclusive licensing agreement through fraud. Gershon intentionally misrepresented to defendants his relationship with Mexican denim manufacturer Future Exports, falsely claiming that he was a principal of that company and that clothing bearing defendants' Mudd brand would be manufactured in the impressive Future Exports factory.

65. Although plaintiff signed and returned a written license agreement, defendants discovered Gershon's fraud shortly thereafter and, therefore, never returned a signed copy. Accordingly, there exists no valid contract between the parties and defendants seek a declaration to that effect.

66. In the alternative, if the Court were to find that defendants had entered into a license agreement with plaintiff, Gershon's fraudulent inducement renders the contract void. Because defendants relied to their detriment on Gershon's material misrepresentations about his

6

relationship with Future Exports and his ability to deliver apparel manufactured at that factory when they offered plaintiff a license for Mudd, the parties' agreement should be rescinded.

67. Finally, even if there were a valid contract between the parties not subject to rescission, plaintiff breached it by failing to pay royalties due immediately upon execution of the license agreement. Defendants seek a declaration that plaintiff's prior breach excused IP's performance and precludes plaintiff's claim for damages.

**The Parties**

68. Defendant/counterclaim-plaintiff IP is a Delaware limited liability corporation with its principal place of business in Wilmington, Delaware. IP owns intellectual property, including Mudd and other brands.

69. Defendant/counterclaim-plaintiff Iconix is a Delware corporation with its principal place of business in New York, New York. Iconix manages IP's brands pursuant to a series of inter-company agreements and licenses them to leading retailers and manufacturers worldwide.

70. Plaintiff purports to be a Mexican corporation with its principal place of business in Mexico. *See* Amended Complaint at ¶ 3.

**Plaintiff's Fraud**

71. In or about early 2006, Gershon approached defendants seeking an exclusive agreement to license the Mudd brand in Mexico.

72. Gail Tentler, Iconix' Director of International licensing, began to explore whether Gershon's company would be a suitable licensee.

73. Defendants entered into negotiations with Gershon only because he represented that his company had the facilities and capacity to manufacture apparel bearing the Mudd brand.

74. Defendants do not license their brands to licensing agents. They always negotiate directly with apparel operators or retailers who have design, production and manufacturing expertise and facilities that meet defendants' quality standards.

75. Defendants consider apparel licensing in Mexico to be a risky venture, since many fly-by-night operators will produce and distribute inferior goods, diminishing the value of a brand. Therefore, defendants were only interested in selling Mudd products in Mexico through a highly reputable and capable licensee.

76. Defendants never requested plaintiff to determine whether exploiting the Mudd brand in Mexico would be profitable or to introduce them to potential sub-licensees or manufacturers. Defendants never intended, expected or agreed to compensate plaintiff for doing so, or for doing any work prior to the execution of a formal written license agreement.

77. In the hopes of securing a license agreement with defendants, Gershon brought Tentler to Mexico in July 2006 and took her on a tour of a denim manufacturing factory owned by Future Exports. Gershon expressly stated that Mudd jeans would be manufactured at the Future Exports facility.

78. During this trip, Gershon told Tentler, falsely, that he was a principal of Future Exports.

79. Gershon introduced Tentler to Mark Nawama and Fadi Twadil, who owned and operated the Future Exports facility, as his business "partners".

80. Thereafter, Gershon continued to imply that he was affiliated with Future Exports by concluding a July 26, 2006 e-mail to Tentler with the signature "Joe Gershon, FUTURE EXPORT S.A. DE CV."

81. These representations were false. Gershon was not, and had never been, a principal of Future Exports. Nawama and Twadil were not, and have never been, his partners.

82. Tentler was favorably impressed with the facilities of Future Exports, its production capacity, the quality and aesthetics of the samples provided, and the presentation and capabilities of Nawama and Twadil.

83. Relying on Gershon's representations that he was a principal of Future Exports and that Mudd products would be produced in the facility that Tentler had toured and approved, defendants decided to offer plaintiff an exclusive license and began negotiating a formal written contract.

84. Defendants only decided to offer an exclusive license to Gershon because they reasonably believed that he was a principal of Future Exports and that Mudd apparel sold in Mexico would be manufactured in Future Exports' factory.

85. Defendants would not have agreed to grant plaintiff a license for the Mudd brand if they had known that Gershon was not affiliated with Future Exports.

86. Defendants would not have agreed to grant plaintiff a license without any idea of how or where Mudd products would be manufactured.

**The Parties Never Formally Executed a Written Contract**

87. Between July and early October 2006, the parties negotiated the terms of a written contract that would have granted plaintiff an exclusive license for Mudd in Mexico.

88. On or about October 3, 2006, Gershon signed a copy of the license agreement on behalf of plaintiff Exportaciones Del Future S.A. DE CV and returned it to defendants. A copy of that agreement is annexed as Exhibit 1 to plaintiff's Amended Complaint.

9

89.     Section 6.2 of the license agreement provides for minimum royalties over the course of the agreement. *Inter alia*, § 6.2 requires plaintiff to pay IP "$50,000 simultaneously with the execution hereof."

90.     Although plaintiff purported to execute the license agreement, it did not pay $50,000 simultaneously. Nor has plaintiff paid defendants any amount of money at any time.

91.     Within days after plaintiff returned a signed copy of the proposed license agreement, defendants learned that Gershon had intentionally made material misrepresentations as described below; for that reason, defendants never returned a signed copy of the license agreement to plaintiff.

**Defendants' Discovery of the Fraud**

92.     In early October 2006, defendants received a call from Nawama and/or Twadil, the true principals of Future Exports, who asked to meet.

93.     At a meeting in Iconix' office in New York, Nawama and Twadil stated that they had been expecting Gershon to provide them with a copy of a license agreement for Future Exports to sign but had become concerned because they had not heard from Gershon. They expressed shock when told that Gershon himself had signed a license agreement with defendants.

94.     Nawama and Twadil told defendants that Gershon was not, and had never been, affiliated with Future Exports, and that Future Exports did not do business or otherwise use the name Exportaciones Del Future S.A. DE CV.

95.     Finally, Nawama and Twadil told defendants that they would not do business with Gershon in light of his misrepresenatations.

96. On or about October 17, 2006, Gershon attended a meeting at Iconix' office. Gershon admitted for the first time that he was not affiliated with Future Exports and claimed that he would find another Mexican factory to manufacture Mudd products.

97. In order to determine whether Gershon had the capability and expertise to manufacture apparel in accordance with defendants' quality standards, defendants requested that he provide additional information about his company and his proposal for Mudd – including a company profile, financial statement, a list of factories that would manufacture Mudd products, and a business plan addressing proposed retail distribution, category roll out and advertising. Gershon never provided satisfactory responses.

98. Tentler returned to Mexico in late October 2006 to conduct additional due diligence. Tentler went to the address where Gershon represented that plaintiff maintained an office, only to find that there was no office at that address.

99. In October 2006, Tentler verbally advised Gershon that defendants would not enter into a licensing agreement with him or plaintiff.

100. On or about November 3, 2006, defendants informed Gershon of the same in writing, and expressly advised him that he was not authorized to represent himself or plaintiff as having a relationship with defendants or the Mudd brand.

## AS AND FOR A FIRST COUNTERCLAIM

### (Declaratory Judgment)

101. The allegations of paragraphs 64 through 100 are incorporated as if repeated herein.

102. Although plaintiff signed and returned a copy of the written license agreement, defendants never did so.

103. Accordingly, there is a justiciable, actual, real, and substantial controversy between the parties with respect to the existence of an enforceable contract, and defendants therefore seek a declaration of their legal rights pursuant to 28 U.S.C. § 2201.

104. Specifically, defendants seek a declaration that there exists no enforceable contract between the parties.

## AS AND FOR A SECOND COUNTERCLAIM

### (Rescission/Fraudulent Inducement)

105. The allegations of paragraphs 64 through 104 are incorporated as if repeated herein.

106. As previously noted, Gershon took Tentler on a tour of the Future Exports factory in Mexico in July 2006 and, at that time, falsely represented that he was a principal of Future Exports.

107. At the same time, Gershon falsely represented that he was a business partner of Nawama and Twadil, the true principals of Future Exports.

108. Gershon also falsely represented that he was affiliated with Future Exports by concluding a July 26, 2006 email to Tentler with the signature "Joe Gershon, FUTURE EXPORT S.A. DE CV."

109. Gershon was not, and had never been, a principal of Future Exports. Gershon's representations about his affiliation with Future Exports were material to defendants because Tentler was favorably impressed with Future Export's facilities, the quality of the goods produced there, and the capabilities of Nawama and Twadil who owned and operated the factory.

110. Defendants would not have agreed to grant plaintiff a license for the Mudd brand if they had known that Gershon was not affiliated with Future Exports.

111.  Defendants would not have agreed to grant plaintiff a license without any idea of how or where Mudd products would be manufactured.

112.  Gershon actually knew that his representations to Tentler about his affiliation with Future Exports were false, or made those misrepresentations with reckless disregard for the truth.

113.  Gershon made false representations about his affiliation with Future Exports in order to deceive defendants or to induce them to enter into an exclusive license agreement with plaintiff for the Mudd brand.

114.  Defendants reasonably relied on Gershon's intentional, material misrepresentations to their detriment by offering plaintiff an exclusive license for the Mudd brand in Mexico.

115.  Because plaintiff fraudulently induced defendants to enter into a license agreement with plaintiff, that contract is void and should be rescinded.

## AS AND FOR A THIRD COUNTERCLAIM

**(Breach of Contract/Declaratory Judgment)**

116.  The allegations of paragraphs 64 through 115 are incorporated as if repeated herein.

117.  As previously noted, § 6.2 of the license agreement signed by plaintiff required plaintiff to pay "$50,000 simultaneously with the execution hereof."

118.  As previously noted, plaintiff did not pay $50,000 simultaneously with the execution of the agreement; nor did plaintiff pay defendants any amount of money at any time.

119.  Accordingly, there is a justiciable, actual, real, and substantial controversy between the parties with respect to whether plaintiff breached the license agreement, and defendants therefore seek a declaration of their legal rights pursuant to 28 U.S.C. § 2201.

120. Specifically, defendants seek a declaration that IP was excused from performing the license agreement by plaintiff's prior breach.

121. In addition, defendants seek a declaration that plaintiff's claims for damages are barred by its prior breach of the license agreement.

WHEREFORE, defendants/counterclaim-plaintiffs Iconix and IP respectfully request that judgment be entered in their favor:

A. dismissing plaintiff's claims in their entirety; and

B. on the FIRST COUNTERCLAIM, issuing a declaration that there exists no valid contract between the parties; and

C. on the SECOND COUNTERCLAIM, rescinding the parties' license agreement on the basis of plaintiff's fraudulent inducement; and

D. on the THIRD COUNTERCLAIM, issuing a declaration that plaintiff's breach of the parties' license agreement excused IP from performing and bars plaintiff's claim for damages; and

E. granting such other and further relief as the Court deems appropriate.

Dated: New York, New York
      March 4, 2008

                                      SPEARS & IMES LLP

                                      By: Debra A. Karlstein
                                      51 Madison Avenue, 25th floor
                                      New York, New York 10010
                                      Tel: (212) 213-1715
                                      Fax: (212) 213-0849

                                      *Attorneys for Defendants Iconix Brand Group, Inc. and IP Holdings LLC*